STATE OF NEBRASKA, APPELLEE, v. WILFRED W. NIELSEN, APPELLANT.

280 N. W. 2d 904

Filed July 3, 1979. No. 42190.

S. J. Albracht of Lathrop, Albracht & Swenson, for appellant.

Paul L. Douglas, Attorney General, and Judy K. Hoffman, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

Defendant was found guilty by a jury of the first degree murder of Edward Grabbe and sentenced to life imprisonment.

The defendant was a 40-year-old professional duck hunter who lived in Blair, Nebraska. He owned a commercial hunting facility for members only located near Mondamin, Iowa. Early on the morning of November 19, 1977, defendant drove from his home in Nebraska to his hunting operation in Iowa and hunted with club members until approximately 11 a.m. The defendant then drove to a bar in Logan, Iowa, where he commenced drinking. After drink-

ing beer for about an hour he drove to a tavern in Blair, Nebraska, where he continued to drink. About 3 p.m. the defendant drove home. He continued drinking and got into an argument with his wife. A short time later he left and drove to a liquor store to purchase more whiskey. When he returned home his wife had taken their child and left. Defendant went to Tekamah, Nebraska, to the home of his wife's sister, looking for his wife, but his wife was not there. He then drove to the farm home of his wife's parents near Spiker, Nebraska.

The defendant arrived at the farm about 4 p.m. Edward Grabbe, his wife, Opal, and their son, 21-year-old Rick, were in the house. Defendant took a gun and walked into the kitchen. Edward Grabbe and the defendant had a short conversation. Rick Grabbe went to the kitchen doorway and saw the defendant point his rifle at the floor and fire it. At that point Mrs. Grabbe entered the kitchen. There was some additional heated conversation in which defendant swore at Edward Grabbe. The defendant fired once more, striking a vase on the wall. Mrs. Grabbe became hysterical. The defendant then said to Edward Grabbe: "Let's go outside." As the two men started to leave the room, Rick Grabbe ran upstairs to his bedroom to get his pistol. The magazine of his pistol came apart and the cartridges fell on the floor. At that point he heard a shot and his mother called to him that the defendant had shot his father. Rick went out the bedroom window onto the porch roof and as he did so he heard another shot. He jumped off the roof and hid under the porch until he heard the defendant drive away. He then came out and found his mother and father lying on the ground outside the house, apparently dead. He ran across the road to his uncle's farm and the sheriff and an ambulance were called. Rick and his uncle returned to the Edward Grabbe house and found Edward and Opal Grabbe both dead.

The defendant's testimony was that he and Edward Grabbe had a conversation in the kitchen and during the conversation defendant's gun went off twice. The defendant and Grabbe agreed to go outside. Defendant's testimony was that Edward Grabbe shoved him outside on the steps and as defendant turned around his gun fired and shot Grabbe. The defendant testified that he did not intend to shoot Grabbe and that he did not remember pulling the trigger when his gun fired. The defendant also testified that he did not remember shooting anyone except Edward Grabbe and did not remember seeing Opal Grabbe outside the Grabbe house. The next thing he remembered he was in his truck somewhere in Iowa and realized that he had shot Edward Grabbe. He threw his gun into the Missouri River from a highway bridge and returned home, where he was arrested later that evening.

In this appeal the defendant first contends that the District Court erred in permitting the prosecution to endorse the names of John Blatter, Mona Stout, and Rick Stout on the information just prior to trial. The witnesses testified some 2 or 3 days later. The defendant did not ask for a continuance or a postponement when the trial court approved the State's motion to endorse the names of the witnesses.

The witness Blatter testified to a conversation which he had with the defendant in jail in which the defendant told him of shooting Edward Grabbe and of the other events of November 19, 1977, which defendant could remember. He did not testify to anything that the defendant did not himself testify to or that a psychiatrist had not described. Defendant was not prejudiced by the late endorsement of Blatter.

The Stout testimony was to the effect that there were hard feelings between the defendant and Edward Grabbe, and that the defendant might have possible reasons to kill him. The defendant himself

admitted that there had been some hard feelings between him and Edward Grabbe caused by the defendant's drinking.

A trial court may, in the exercise of its discretion, permit the names of witnesses to be endorsed upon an information before or after the trial has begun when there is no showing of prejudice to the rights of the defendant. State v. Woods, 182 Neb. 668, 156 N. W. 2d 786.

The trial court, in its discretion, may permit the names of additional witnesses to be endorsed upon the information after trial has begun, and such action cannot be availed of as error where defendant makes no showing of prejudice or does not ask for postponement or continuance of the trial. McCartney v. State, 129 Neb. 716, 262 N. W. 679. The record here does not reflect prejudice and there was no motion for continuance.

Defendant also contends that the court erred in permitting the State to introduce any evidence of the killing of Opal Grabbe on the ground that evidence of other crimes is not admissible except to prove motive, intent, malice, deliberation, and premeditation.

The evidence in this case showed that Opal Grabbe was killed within a matter of minutes after Edward Grabbe and that the two killings were parts of one continuous transaction. One of the defenses was that the killing of Edward Grabbe was accidental. The rule is well established in this state that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. § 27-404 (2), R. R. S. 1943; State v. Metzger, 199 Neb. 186, 256 N. W. 2d 691.

Evidence of other criminal acts which involve or

explain the circumstances of the crime charged, or are integral parts of an overall occurrence or transaction, may be admissible. See, Wigmore on Evidence (3rd Ed.), § 218, p. 719; Buatte v. United States, 350 F. 2d 389 (9th Cir., 1965), cert. den. 385 U. S. 856, 87 S. Ct. 104, 17 L. Ed. 2d 83; Caldwell v. Commonwealth, 503 S. W. 2d 485 (Ky. App., 1972).

This court has also held that it is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constituent elements of the crime with which the accused is charged even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes. State v. Riley, 182 Neb. 300, 154 N. W. 2d 741.

It should be noted that the trial court in this case specifically instructed the jury that any evidence as to the killing of Opal Grabbe was received solely and for the limited purpose of showing intent or motive as to the particular acts charged, and that the jury must not consider that evidence for any other purpose. The trial court did not err in permitting such evidence to be introduced in this case.

The judgment is affirmed.

AFFIRMED.