STATE OF NEBRASKA, APPELLEE, V. STEPHEN L. MECUM,
APPELLANT.

404 N.W.2d 431

Filed April 24, 1987.   No. 86-237.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns, for appellant.

Robert M. Spire, Attorney General, and Linda L. Willard, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Following a jury trial, defendant-appellant, Stephen L. Mecum, was adjudged guilty of two counts of robbery in violation of Neb. Rev. Stat. § 28-324(1) (Reissue 1985) and of using a motor vehicle to flee arrest in violation of Neb. Rev. Stat. § 28-905(2) (Reissue 1985). In this appeal defendant assigns as errors the district court's rulings which (1) sustained the prosecutor's motion to endorse an additional witness during the course of the trial, (2) overruled defendant's motion for a continuance after the additional witness was endorsed, and (3) overruled defendant's objection to a portion of a jury instruction. We affirm.

Christine Klemas-Luna was a clerk at a Kwik Shop on 10th and Missouri Streets in Omaha on May 20, 1985. At approximately 12:20 a.m., a man went into the store, said "something about a knife," kept his right hand in his pocket, and announced he wanted all her money. The man grabbed the $1 and $5 bills Klemas-Luna had placed on the counter from the cash register drawer and put them in his left front pocket. He then grabbed some coins and started to leave, but returned, mumbled "something about a gun," and said he wanted the "twenties." The man then took some more coins and left. A total of approximately $64 was taken. Although the man used a shirt to cover his head, Klemas-Luna was nonetheless able to see his nose, eyes, and part of his red hair. Klemas-Luna called the police and gave them a description of the man, including the fact he had red hair and the clothes he was wearing. At about 12:30 a.m., Police Officer John Hill, Jr., after hearing of the robbery over his radio, saw a white Ford LTD automobile traveling at a high rate of speed approximately a mile from the Kwik Shop. Hill began following the accelerating automobile, and at one point got close enough to observe that the driver had red hair. Hill activated his patrol car's lights and siren, but the driver continued to travel at a high rate of speed, ignoring stop signs. When the speed reached 70 miles per hour, Hill slowed down, since it was raining and there was water on the streets.

Hill temporarily lost sight of the automobile, but a police roadblock eventually brought it to a stop. Crumpled paper money was found under the front seat of the automobile and in defendant's left front pocket.

Defendant was then taken back to the Kwik Shop so that Klemas-Luna could identify him. Klemas-Luna first observed defendant standing between two officers in the store's parking lot. Since it was raining and the parking lot was not very well lit, all she could identify at that time were the clothes defendant was wearing. She stated these clothes were the same as those worn by the robber. Defendant was then brought into the store, and Klemas-Luna identified him as the robber, as she did at the trial.

On June 17, 1985, John MacArthur III, an assistant manager of a Kwik Shop at 3440 South 50th Street in Omaha, was the only person in the store when, at approximately 2:30 a.m., a hostile-acting man entered, purchased a pack of cigarettes, and left. Shortly thereafter, the same man returned with his jacket draped over his head and ordered MacArthur to give him his money. Although MacArthur did not see a weapon, the robber kept his hands in his pockets. Being afraid, MacArthur handed over approximately $145.

MacArthur told the police he thought he could identify the man and was shown a group of five photographs. All five photographs were of men having rugged faces and unruly hair, and most had red hair. MacArthur immediately chose the second photograph as depicting the robber, but the officer asked him to look at all five. MacArthur did so, but remained certain that his first choice was a photograph of defendant, whom MacArthur later again identified at the trial.

After the first two trial witnesses, Klemas-Luna and MacArthur, had testified, the prosecutor told the judge and defense counsel that Judy Hoyt, a former girlfriend of and potential witness for defendant, had come to him and reported that she had been threatened by defendant to testify in his favor. She also said defendant had admitted to her that he had committed the first Kwik Shop robbery. The prosecutor then asked leave to endorse Hoyt as a State's witness, a request the court granted. Defense counsel thereupon asked for a continuance so that he could prepare for this testimony. The

trial court denied a continuance but gave defense counsel the opportunity to interview Hoyt or take her deposition before she testified. The record does not show whether defense counsel availed himself of these opportunities, but does show that defense counsel had previously had several conversations with Hoyt.

Hoyt later testified that she visited defendant in jail during July and August of 1985 and that, while defendant denied involvement in the second robbery, he confessed to the first Kwik Shop robbery. The jail visitation records established that Hoyt had not visited defendant in July but had visited him four times in August. Hoyt also testified on cross-examination that she had earlier filed assault charges against defendant and was afraid of him.

Hill testified that defendant was the person he had chased on May 20, 1985. A friend of defendant's testified that he drank beer with defendant around May 20, last talking with him sometime after 11 p.m.

Defendant testified on his own behalf and denied any involvement in either robbery and denied ever confessing to Hoyt. He explained that he had a lot of change in his possession on May 20 because he intended to play pool and had taken all the change out of a bowl he kept on his dresser. According to defendant, he left the bar where he had been drinking at 12:15 a.m. and was heading home when a police car began following him. He tried to outrun the police because he was drunk and possessed drugs. The pills taken from defendant's automobile were tested and shown to contain only caffeine. While defendant admitted being in MacArthur's Kwik Shop to buy cigarettes, he said that after buying the cigarettes he left Omaha and drove to Iowa to see Hoyt.

In connection with the first assignment defendant points out that this court has said the endorsement of additional witnesses just before trial is a practice to be avoided. *State v. Otey*, 205 Neb. 90, 287 N.W.2d 36 (1979), *cert. denied* 446 U.S. 988, 100 S. Ct. 2974, 64 L. Ed. 2d 846 (1980). He in effect argues that endorsing an additional witness during trial is worse than doing so shortly before trial. We agree that as a general rule the State should not be permitted to endorse an additional witness during

the course of a trial. However, the trial court may, in the exercise of its discretion, permit the names of witnesses to be endorsed upon an information before or after trial has begun when doing so does not prejudice the rights of the defendant. *State v. Ellis*, 223 Neb. 779, 393 N.W.2d 719 (1986); *State v. Nielsen*, 203 Neb. 847, 280 N.W.2d 904 (1979); *Svehla v. State*, 168 Neb. 553, 96 N.W.2d 649 (1959). Neb. Rev. Stat. § 29-1602 (Reissue 1985) provides that the prosecuting attorney shall endorse upon the information the

> names of the witnesses known to him at the time of filing the same; and at such time thereafter, as the court or a judge thereof in vacation, in its or his discretion, may prescribe, he shall endorse thereon the names of such other witnesses as shall then be known to him.

Thus, the circumstances under which the additional name was added must be considered in determining whether the trial court erred by abusing its discretion. In the present case Hoyt was known to defendant, she had been interviewed by defense counsel, the prosecutor told defense counsel what he expected Hoyt to say, and the identification testimony of Klemas-Luna and Hill rendered cumulative Hoyt's testimony that defendant admitted to her that he had committed the first robbery. Under the circumstances, it cannot be said the district court abused its discretion in permitting the endorsement of Hoyt as an additional witness.

The claim made in the second assignment, that the district court erred in not granting a continuance, is equally without merit. While the record does not show whether defendant took advantage of the opportunity to again interview Hoyt and depose her, neither does the record tell us what a continuance would have accomplished. Defendant was able to show by the jail visitation records that Hoyt had not visited defendant in July as she claimed and was further able to imply that she was afraid of him as the result of having charged him with assault, thereby providing the jury with a basis for evaluating her desire to keep defendant in jail and to otherwise question her credibility. A motion for a continuance is addressed to the trial court's sound discretion, and its ruling thereon will not be disturbed on appeal absent a showing of an abuse of that

discretion. *State v. Donnelson, ante* p. 41, 402 N.W.2d 302 (1987); *State v. Sluyter*, 224 Neb. 768, 401 N.W.2d 480 (1987); *State v. Polyascko*, 224 Neb. 272, 397 N.W.2d 633 (1986); *State v. Lynch*, 223 Neb. 849, 394 N.W.2d 651 (1986). The foregoing factors, as well as those discussed in connection with the first assignment of error, established that the district court did not abuse its discretion in refusing to grant defendant a continuance.

This brings us to the third and last assignment, that the district court erred in overruling defendant's objection to the last paragraph of instruction No. 12. That instruction as given reads:

> The identity of the defendant as the perpetrator of the crimes charged is a material element of each and every offense herein. The State has the burden of proving identity beyond a reasonable doubt. Therefore, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant as the perpetrator of the offense before you can convict him.
>
> Identification testimony is an expression of belief or impression by a witness. In evaluating the identification testimony of a witness, you should consider, among other things, (1) the opportunity and capacity each witness had to observe the offender; (2) whether the identification made by the witness subsequent to the offense was the product of his own recollection of the offense; (3) whether a witness' identification testimony at trial is affected by a prior identification of the defendant, or prior failure to identify the defendant; (4) the length of time that elapsed between the occurrence of the crime and the first opportunity of the witness to see the defendant or his photograph; (5) the credibility of each witness pursuant to Instruction No. 17 .
>
> The identity of the defendant as the perpetrator of the Crime charged need not be proved by eye witness testimony alone, but may also be proved by circumstantial evidence as explained to you in Instruction No. 13 .

Defendant does not claim that instruction No. 13 fails to properly define and characterize the nature of circumstantial

evidence or that instruction No. 17 fails to properly advise the jury of the factors to consider when assessing a witness' credibility. Defendant's sole claim is that somehow the last paragraph of instruction No. 12

> enabled the jury to focus its attention on criteria not embraced by the courts. By allowing the jury to consider circumstantial evidence in determining whether the State proved beyond a reasonable doubt the identity of the Defendant, was incorrect. In other words, the District Court's instruction was too broad and could easily have lead [sic] the jury to consider irrelevant evidence in determining if the State had proved beyond a reasonable doubt the identity of the Defendant.

Brief for Appellant at 9.

Defendant does not, however, tell us how the questioned language led the jury to consider irrelevant matters in determining whether defendant was in fact the perpetrator of the crimes charged. Indeed, the identity of the perpetrator of a criminal offense may be proven by inference and circumstantial evidence, precisely as the last paragraph of instruction No. 12 states. *United States v. Royals*, 777 F.2d 1089 (5th Cir. 1985); *United States v. Lawrence*, 699 F.2d 697 (5th Cir. 1983), *cert. denied* 461 U.S. 935, 103 S. Ct. 2103, 77 L. Ed. 2d 309; *United States v. Quimby*, 636 F.2d 86 (5th Cir. 1981). The questioned language was appropriate because defendant was found in possession of a large number of coins and of crumpled paper money in his left front pocket, as well as in his automobile. These circumstances tied him to the first robbery and would support a finding he was the perpetrator of that offense even if the jury chose to reject Klemas-Luna's identification testimony.

The judgment of the district court is correct and is accordingly affirmed.

AFFIRMED.