565 A.2d 390

**Warren E. TYDINGS, Sr., et al.**

**v.**

**BERK ENTERPRISES, et al.**

**No. 282, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Nov. 6, 1989.

Albert D. Brault (Janet S. Zigler and Brault, Graham, Scott & Brault, on the brief), Rockville, for appellants, Tydings, etc.

Jacob A. Stein (Stein, Mitchell & Mezines, on the brief), Washington, D.C., for appellant, Montgomery Golf Corp.

Jeffrey M. Johnson (Barry Wm. Levine, Elaine Metlin and Dickstein, Shapiro & Morin, on the brief), Washington, D.C., for appellees.

Argued Before GILBERT, C.J., and BISHOP, and WENNER, JJ.

GILBERT, Chief Judge.

We are asked in this appeal whether a court may appoint counsel for a solvent on-going corporate business entity notwithstanding the corporation's desire to obtain counsel of its own choosing. There are, to be sure, a number of instances where a court is empowered, by statute, to appoint counsel in civil cases. For example, the court may appoint an attorney

—for the representation of a child or children in an adoption proceeding (Md. Fam. Law Code Ann. § 5–323; Md. Rule R74);

—for an incompetent (Md. Rule R75);

—where "a person in emergency management and civil defense service, or a person suffering injury or damage is a party" in a court proceeding and does not personally appear, "or is not represented by an authorized attorney" (Md.Ann.Code art. 16A, § 17(c));

—in a condemnation proceeding which may affect the interest of a defendant in gestation, not in being, under a disability or whose identity or whereabouts is unknown (Md. Rule U10);

—for a minor or person under a disability who has an interest in a fiduciary estate other than a guardianship of the property of the minor or disabled person (Md. Rule V71(e));

—for a minor in a guardianship proceeding (Md. Est. & Trusts Code Ann. § 13–211(b));

—for the child or children in a custody case (Md. Fam. Law Code Ann. § 1–202(1));

—where a veteran of World War II is aggrieved by an action of the State involving rights or privileges granted to such veterans (Md.Ann.Code art. 96½ § 18).

The Legislature, realizing the need to "protect" individuals who are unable to protect themselves, granted the civil courts power to appoint counsel under the doctrine of "parens patriae." With the exception of the veterans provision, all of the above statutory provisions were promulgated for persons under a fiscal, legal, mental, or physical disability. The veterans provisions may be perceived as political.

We have neither found nor been directed to any Maryland statutory provision that empowers a court to appoint counsel for a corporation. There is, however, case law in other jurisdictions, pro and con, on the subject. We shall discuss those cases, *infra*, but first we shall provide a factual backdrop so as to place the instant matter in proper perspective.

### The Facts

Montgomery Golf Corporation owns and operates the Montgomery Country Club in Laytonsville, Maryland.[1] The

---

1. Montgomery Golf Corporation is organized and existing under the corporation laws of the State of Maryland. Its principal place of business is in Maryland.

corporation's stockholders consist of two warring factions. The minority faction—owners in the aggregate of 48 percent of all outstanding voting stock—is composed of Berk Enterprises, Maurice Berk, Duffy Bros., Inc. and Top of the Park Corporation. For purposes of convenience we shall refer to the minority collectively as "Berk." The majority—owners of the remaining 52 percent of the outstanding voting stock—are Warren E. Tydings Sr., Warren E. Tydings Jr., Anne Marie Tydings, George R. Tydings, and Eleanor T. Reynolds, all of whom we shall refer to collectively as "Tydings."

Berk has filed a suit in the Circuit Court for Montgomery County against Tydings and Montgomery Golf. The suit alleges that Tydings breached an oral contract to share control of Montgomery Golf. The complaint further avers that Tydings has looted the corporation and seeks recompense for that alleged raid on the corporate treasury. Additionally, Berk has sued Montgomery Golf for services purportedly rendered to the corporation by Berk.

Tydings and Montgomery Golf responded through their attorney, David Manoogian, Esq. Berk moved to disqualify Mr. Manoogian and his law firm from representing Montgomery Golf because of a conflict of interest.[2] For the same reason, Berk sought Mr. Manoogian's removal as counsel for Tydings.

Oral argument was heard on the motion, and the court properly granted Berk's motion. Mr. Manoogian and his firm were disqualified from representing Montgomery Golf.[3] The judge deferred ruling on whether Mr. Manoogian could continue to represent Tydings.

Addressing the need for Montgomery Golf to be represented by separate counsel, the hearing judge directed both Berk and Tydings to attempt to agree on another counsel for the corporation. The judge said that, in the event the

---

**2.** The Maryland Rules of Professional Conduct, Rule 1.7.

**3.** *See* n. 2, *supra.*

parties could not agree, each was to submit the names of nominees from which the court would appoint an attorney for the corporation. The list of nominees was to be submitted to the judge no later than January 6, 1989.

No agreement was reached between the parties, and Berk nominated one lawyer. Tydings did not submit any names for consideration. The judge appointed Berk's sole nominee, John R. Dugan, Esq., as counsel for Montgomery Golf. Mr. Dugan was never formally notified of his appointment but was told of it by Berk's counsel. No order of appointment is in the record.

A hearing was scheduled for January 19, 1989, at which time the court was to rule on whether Mr. Manoogian could continue to represent the Tydings. Prior thereto, Mr. Manoogian withdrew as counsel, and Albert D. Brault, Esq. entered his appearance on behalf of Tydings. Jacob A. Stein, Esq. entered his appearance on behalf of Montgomery Golf.[4] Mr. Brault and Mr. Stein then submitted to the court a joint motion for reconsideration of Mr. Dugan's appointment as counsel for the corporation, but the judge orally affirmed his appointment of Mr. Dugan as counsel for Montgomery Golf. Disappointed, dissatisfied, and disgruntled, Tydings appealed.[5]

### The Issue

Tydings argues that the hearing judge possessed neither the authority nor the inherent power to appoint counsel for the corporation. Tydings reasons that Montgomery Golf is a viable corporation and not in need of judicial protection or supervision. Montgomery Golf's board of directors, Tyd-

---

**4.** Five members of the Tydings family sit on Montgomery Golf's seven member Board of Directors, thereby effectively controlling the corporation.

**5.** This interlocutory matter reaches us pursuant to Md. Cts. & Jud. Proc.Code Ann., § 12–303(c)(1) as the result of an order of the Circuit Court for Montgomery County forbidding the Montgomery Golf Corporation from being represented by counsel of its choosing.

ings asserts, has the right to choose the corporation's counsel.

The hearing judge, in ruling that he had the authority to appoint counsel, said:

"I recognize full well that, in doing so, I am also addressing myself to the question ... the constitutional question that is raised by Mr. Brault, which is a first rate issue, and which also gets mixed up in all of this and needs to be, perhaps, addressed by an Appellate Court."

The judge's perception of the problem was correct. His resolution of it was not.

### I.

### *The Law*

The hearing court was fully attuned to Montgomery Golf's need for independent counsel. "The test for determining whether there is an impairing conflict is probability, not certainty." *Pirillo v. Takiff,* 462 Pa. 511, 529, 341 A.2d 896, 905 (1975). *See also Middleberg v. Middleberg,* 427 Pa. 114, 115, 233 A.2d 889 (1967); *Seifert v. Dumatic Industries, Inc.,* 413 Pa. 395, 398, 197 A.2d 454 (1964). Once the probability of conflict is recognized by the court, the judge may "restrain conduct which has the potential for evolving into a breach of ethics before such conduct becomes ripe for disciplinary action." *Pirillo, supra, citing Slater v. Rimar, Inc.,* 462 Pa. 138, 338 A.2d 584 (1975); *Kremer v. Shoyer,* 453 Pa. 22, 311 A.2d 600 (1973); *Middleberg v. Middleberg, supra.* The hearing judge, as we have said, correctly disqualified Mr. Manoogian from representing Montgomery Golf and trying to serve two masters.

Representation of a corporation as an entity and the majority of its directors, individually, creates a possible conflict of interest for the attorney, particularly where the corporation's interests are adverse to those of the directors. The majority of the Supreme Court of Iowa said in *Rowen v. LeMars Mut. Ins. Co. of Iowa,* 230 N.W.2d 905, 914–15 (Iowa 1975):

"It is also well established that a potential conflict of interest exists when the same law firm attempts to represent the nominal corporate defendant in a derivative action while at the same time representing the corporate insiders accused of wrongdoing. *Murphy v. Washington American League Baseball Club, Inc.*, 116 U.S. App. D.C. 362, 324 F.2d 394 (1963); *Lewis v. Shaffer Stores Company*, 218 F.Supp. 238 (S.D.N.Y.1963); 13 Fletcher, Cyclopedia of Private Corporations § 6025 (1970); see also *Yablonski v. United Mine Workers*, [145 U.S. App. D.C. 252, 448 F.2d 1175 (1971), *cert. denied* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972);] ... *Milone v. English*, [113 U.S.App.D.C. 207, 306 F.2d 814 (1962);] and *International Brotherhood of Teamsters, Etc. v. Hoffa*, ... [242 F.Supp. 246 (1965) ]."

Rule 1.7 of the Maryland Rules of Professional Conduct [6] provides:

"(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation."

The American Bar Association Model Code of Professional Responsibility Ethical Consideration 5–18 declares:

---

6. The Md. Rules of Professional Conduct became effective January 1, 1987. *See* Md. Rule 1230.

*"A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity.* In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization. Occasionally a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present." (Emphasis supplied.)

When, in a suit against a corporation and its directors, an attorney undertakes to represent both the corporation and any of its directors, individually, a possible conflict of interest immediately arises. Maryland Rule of Professional Conduct 1.7 and ABA EC 5-18, both above quoted, make clear that when counsel is retained by a corporation his or her loyalty and duty is to the corporate being. Counsel is under an obligation to act in the best interest of the corporation.[7]

The action filed by Berk was, in part, a shareholder's derivative action against the corporation's directors. Mr. Manoogian, had he remained as counsel for both Tydings and Montgomery Golf, would have been in the precarious position of being both an adversary and proponent of Montgomery Golf. His disqualification was mandated by Maryland Rule of Professional Conduct 1.7.

 We turn now to the crux of this appeal, the consideration of the hearing judge's appointment of counsel for the

---

7. Because of the nature of attorney-client relationship, the ABA Model Code of Professional Responsibility, DR 5-105(D), prohibits any partner, associate, or lawyer affiliated with an attorney who declines or withdraws from employment under a Disciplinary Rule from continuing or accepting employment with that client.

corporation, despite the majority shareholders' desire to obtain counsel of their own choosing.

Since the issue appears to be novel in Maryland, we, as did the hearing judge, venture into uncharted waters, plotting our course as we go.

It is well settled in criminal law that a defendant is entitled to counsel of his or her choice if able to "satisfy the fee required." *Anderson v. State*, 3 Md.App. 362, 367, 239 A.2d 579 (1967). When an accused is unable to pay for the services of private counsel, the State is then required to provide counsel to the defendant and to pay for counsel's services. *Murray v. Director*, 228 Md. 658, 660, 179 A.2d 878 (1962).

The crystalline right of the court to appoint counsel for indigent defendants in criminal cases becomes murky when an attempt is made to apply the same authority in a civil case. The Congress of the United States, wrestling with this problem, enacted what is now 28 U.S.C. § 1915. That section of the federal code permits a court of the United States to appoint counsel to any party in a civil action or proceeding upon a showing that the party is indigent.[8] The power is discretionary and is exercised only in exceptional circumstances. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir.1984), citing *Cork v. Bounds*, 518 F.2d 779 (4th Cir. 1975). Maryland has no similar statute.

Montgomery Golf is a corporation, and it may sue or be sued, complain, and defend itself in all courts.[9] Corporations are artificial beings that are entitled to the same protections of due process as are individual human beings. *Brooks v. State Board*, 233 Md. 98, 108, 195 A.2d 728 (1963).

---

**8.** *See also McKeever v. Israel*, 689 F.2d 1315 (7th Cir.1982); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir.1978).

**9.** Md. Corps. and Ass'ns Code Ann. § 2–103(2).

Montgomery Golf is a functioning, economically viable corporation and financially capable of paying for the services of counsel of its choice.

Tydings avers that the mere fact that they, as a family, comprise or control the majority of the board of directors of Montgomery Golf and are the majority stockholders does not erase the corporation's own separate and distinct identity. We agree.

Montgomery Golf must have independent counsel to safeguard its interests, but that does not mean it is left to the court's discretion to appoint counsel for the corporation. In *Lewis v. Shaffer Stores Company,* 218 F.Supp. 238 (S.D.N.Y.1963), a case factually similar to the one at Bar, the court held:

> "The interests of the officer, director and majority stockholder defendants in this action are clearly adverse, on the face of the complaint, to the interests of the stockholders of Williams other than defendants. I have no doubt that Breed, Abbott & Morgan believe in good faith that there is no merit to this action. Plaintiff, of course, vigorously contends to the contrary. The court cannot and should not attempt to pass upon the merits at this stage. Under all the circumstances, including the nature of the charges, and the vigor with which they are apparently being pressed and defended, *I believe that it would be wise for the corporation to retain independent counsel, who have had no previous connection with the corporation, to advise it as to the position which it should take in this controversy. See Garlen v. Green Mansions, Inc.,* 9 A.D.2d 760, 193 N.Y.S.2d 116 (1st Dept.1959); *Marco v. Dulles,* ... [169 F.Supp. 622 (2d Cir.1959)].
>
> The fact that the selection of such independent counsel will necessarily be made by officers and directors who are defendants does not seem to me to present any insuperable difficulty." (Emphasis added.)

Faced with the same quandary in *Messing v. FDI, Inc.*, 439 F.Supp. 776 (D.N.J.1977), the judge refused to appoint counsel for FDI, stating:

"This Court, while not necessarily approving the procedure suggested by present counsel for FDI, will at this time direct only that the corporation resolve this problem as it would any other issue as to which the existence of interested directors renders the usual corporate decision-making process unavailable. Of course, the directors may request this or any other court with jurisdiction over the matter to relieve them of this duty. It may well be that there are other ways to fashion a solution to this problem. However, at this time, this Court declines to itself appoint counsel or to prospectively pass on the method proposed by present counsel for FDI. It is the duty of the directors, in this as in other matters, to act in the corporation's best interest. If they are disqualified from acting on this or on any other matter, then it is for them, in the first instance, to devise a method to accommodate the need to continue the corporate enterprise while refraining from participating in any corporate decision in which they might have a personal interest. They act, or fail to act, at their peril."

The Iowa Supreme Court in *Rowen v. LeMars Mut. Ins. Co. of Iowa, supra* at 916, declaring that it could "exercise our discretion to permit the corporation [to] chose independent counsel to represent ... [it], or the trial court can select the independent counsel,"[10] opted for the second alternative. The Court reasoned that if the corporation chose the "independent counsel" then counsel "would be subject to the control of those accused of wrongdoing." That reasoning, we think, is fallacious. How can counsel be "independent" and, simultaneously, dependent upon and subject to the control of the wrong doer? One is independent or not, but never independent and dependent at the same time.

---

**10.** *See* Note 84 Yale L.J. 524, 533–36 (1965).

Chief Justice Moore, persuasively dissenting in *Rowen*, penned:

"The majority order for trial court appointment of counsel for each of the two corporations ignores the safeguards of the adversary process. It may be constitutionally infirm, raising questions of deprivation of property without due process of law and infringement upon right to choose counsel.

The majority holding is unprecedented, unwarranted and unwise. I would hold each corporation should select counsel having no previous connection with the corporation or any of its officers or directors."

We agree with Chief Justice Moore and specifically reject *Rowen*. We add that the majority in *Rowen* impugn the integrity of the Bar in general and of Iowa in particular.

There is no reason for this Court to believe that counsel, even though chosen for the corporation by the majority of the Board of Directors, will fail to perform in accordance with the Rules of Professional Conduct. There is no reason for us to believe that counsel for the corporation will represent anyone other than the corporate entity. Unlike the Iowa Court, we entertain no reservation with respect to counsel chosen by the majority of the Board of Montgomery Golf.

We hold that the circuit court was without authority to appoint counsel for Montgomery Golf. The choice of independent counsel rests with the corporation. We are confident that Montgomery Golf's board of directors will exercise its fiduciary duty to the stockholders and retain competent, independent counsel. That counsel, of course, will, as we have previously stated, represent the interest of the corporation and not of Tydings.

## II.

### Waiver Vel Non

Tydings next concludes that Montgomery Golf did not waive its right to choose its own counsel merely because

Mr. Manoogian failed to object to the hearing judge's proscribed "procedure" for appointment of counsel, *i.e.*, the submittal to the judge of nominees to be counsel. There is no need to address that issue in light of our holding. Since the hearing judge was without authority to appoint counsel, it follows that he had no power to establish a procedure to do that which he could not do.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEES.