**J. Randolph MUSHENO, John R. Musheno, individually and on behalf of all shareholders of Keystone Heritage Group, Inc., Plaintiffs,**

**v.**

**Harry Z. GENSEMER, Albert B. Murry, Ernest D. Williams, Jr., Raymond M. Dorsch, Jr., Donald W. Lesher, Jr., Mark Randolph Tice, Lance M. Frehafer, Charles V. Henry, III, Harlan R. Wengert, The Estate of John H. Gerdes, Elvin H. Spitler, Norman J. Rothermel, Kurt A. Phillips, The Estate of Harry T. Richwine, Bruce A. Johnson, Lebanon Valley National Bank, Keystone Heritage Group, Inc., Defendants.**

Civ. A. No. 1:CV–95–570.

United States District Court,
M.D. Pennsylvania.

July 10, 1995.

834

Richard E. Freeburn, Wilt, Magdule, Freeburn, Harrisburg, PA, for J. Randolph Musheno, John R. Musheno.

Mark M. Wilcox, Michael F. Brown, Drinker, Biddle & Reath, Philadelphia, PA, for Harry Z. Gensemer, Albert B. Murry, Ernest D. Williams, Jr., Raymond M. Dorsch, Jr., Donald W. Lesher, Jr., Mark Randolph Tice, Lance M. Frehafer, Harlan R. Wengert, Estate of John H. Gerdes, Elvin H. Spitler, Norman J. Rothermal, Kurt A. Phillips, Estate of Harry T. Richwine, Bruce A. Johnson.

Jeffrey B. Rettig, Thomas, Thomas & Hafer, Harrisburg, PA, Mark M. Wilcox, Michael F. Brown, Drinker, Biddle & Reath, Philadelphia, PA, for Charles V. Henry, III.

Wilbur L. Kipnes, Philadelphia, PA, Mark M. Wilcox, Michael F. Brown, Drinker, Biddle & Reath, Philadelphia, PA, for Lebanon Valley National Bank, Keystone Heritage Group, Inc.

## MEMORANDUM

CALDWELL, District Judge.

We are considering the Plaintiffs' motion to disqualify Defendants' counsel.

## I. INTRODUCTION

The Plaintiffs are shareholders of Keystone Heritage Group, Inc. ("Keystone"). They instituted this action by filing a writ of summons on January 6, 1994, in the Dauphin County Court of Common Pleas, against Keystone, Lebanon Valley National Bank ("LVNB"), and the board of directors of Keystone and LVNB ("Directors")[1]. The claims arise from two loans made by LVNB to Gelder, Luttrell & Associates ("GLA"). Plaintiffs contend that the loans were made in violation of the National Bank Act, 12 U.S.C. § 21 *et seq.*, which limits the amount of money a bank can lend to a single customer.

On January 21, 1994, Plaintiffs' counsel sent a letter of demand to Defendant Lesher requesting that Keystone take action against the individuals responsible for losses sustained as a result of illegal loans to GLA. On February 22, 1994, the Directors appoint-

---

1. Keystone, a bank holding company, engages in banking through LVNB, its wholly owned subsidiary. Thus, we will refer to Keystone and LVNB collectively as "Keystone". The board of directors of the two corporations are nearly identical. The Directors named as Defendants here are: Harry Z. Gensemer, Albert B. Murry, Ernest D. Williams, Jr., Raymond M. Dorsch, Jr., Donald W. Lesher, Jr., Mark Randolph Tice, Lance M. Frehafer, Charles V. Henry, III, Harlan R. Wengert, the Estate of John H. Gerdes, Elvin H. Spitler, Norman J. Rothermel, Kurt A. Phillips, the Estate of Harry T. Richwine, and Bruce A. Johnson. Defendant Henry also served as legal counsel to Keystone.

ed an independent committee to investigate Plaintiffs' demands. This group was composed of two non-defendant Directors, Thomas I. Siegal and Brett H. Tennis, and independent counsel, John P. Lampi. The committee conducted an investigation and concluded that it would not be in Keystone's best interest to pursue legal action against the Directors named in Plaintiffs' writ of summons.

After the committee's recommendation was accepted by Keystone, the parties moved forward in the state court action, engaging in pre-complaint discovery. On April 12, 1995, before a complaint was filed, the Directors removed the case to this court, and on May 5, 1995, Plaintiffs filed their complaint against Keystone, LVNB, and the Directors. The complaint contains seven claims, all arising from losses sustained in connection with the allegedly improper loans to GLA.

In Count I, Plaintiffs maintain that the Directors violated 12 U.S.C. § 84, which limits the amount a bank is permitted to lend to one customer. A negligence claim is made in Count II and Count III is a claim for self-dealing, willful misconduct, and/or recklessness. In Count IV, Plaintiffs contend that the Directors breached their fiduciary duty and in Count V assert that they engaged in fraud. Count VI alleges a conspiracy and Count VII is a claim for negligence against Defendant Charles V. Henry, as counsel for Keystone.

The law firm of Drinker, Biddle & Reath ("Drinker") entered an appearance in state court on behalf of Keystone and the Directors. Plaintiffs seek to disqualify Drinker from continuing its dual representation. They claim there is a conflict of interest in the representation of both Keystone and its Directors, and that such representation violates the Model Rules of Professional Conduct. The Directors contend that, at this stage of the litigation, there is no conflict of interest, and that it is premature to disqualify counsel from representing Keystone because Keystone's interests are aligned with those of its Directors, i.e., to have this action dismissed.

## II. LAW AND DISCUSSION

### A. Disqualification

The Plaintiffs' suit appears to be a shareholder derivative action. In a derivative action, suit is brought on behalf of a corporation, by its shareholders. The defendants are generally corporate officers and directors, as well as the corporation itself. However, the corporation is merely a "nominal" defendant, and in fact stands to receive a substantial benefit if the plaintiffs/shareholders are successful. *See, e.g., Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1315 (3d Cir.1993). Thus, the corporation is in the anomalous position of being both a plaintiff and a defendant.

We are faced with the question of whether, within the confines of the Model Rules of Professional Conduct, an attorney or law firm can engage in the joint representation of both a corporation and its officers/directors in a derivative action. This issue has, to some extent, produced a split in authority. Early decisions adopted the position that, at least in the absence of a breach of trust, joint representation was permissible. *See, e.g., Otis & Co. v. Pennsylvania R. Co.*, 57 F.Supp. 680, 684 (E.D.Pa.1944), *aff'd per curiam*, 155 F.2d 522 (3d Cir.1946); *Hornsby v. Lohmeyer*, 364 Pa. 271, 279, 72 A.2d 294, 299 (1950).

However, more recent decisions, beginning with *Lewis v. Shaffer Stores Co.*, 218 F.Supp. 238 (S.D.N.Y.1963), have identified numerous problems with dual representation. In *Lewis*, the shareholders of a corporation brought a derivative action against the corporation and its board of directors. After counsel entered an appearance on behalf of the corporation and its Directors, the shareholders sought to disqualify the law firm from representing the corporation. The court stated that

[t]he interests of the officer, director and majority stockholder defendants in this action are clearly adverse, on the face of the complaint, to the interests of the stockholders of [the corporation] other than defendants. I have no doubt that [the attorneys] believe in good faith that there is no merit to this action. Plaintiff, of course,

vigorously contends to the contrary. The court cannot and should not attempt to pass upon the merits at this stage. Under all the circumstances, including the nature of the charges, and the vigor with which they are apparently being pressed and defended, I believe that it would be wise for the corporation to retain independent counsel, who have had no previous connection with the corporation, to advise it as to the position it should take in this controversy.

*Id.* at 239–40 (citations omitted).

In *Cannon v. U.S. Acoustics Corp.*, 398 F.Supp. 209 (N.D.Ill.1975), *aff'd in relevant part per curiam*, 532 F.2d 1118, 1119 (7th Cir.1976), the court disqualified a law firm from representing a corporation and its board of directors in a derivative action, where the complaint alleged a misappropriation of corporate funds by the Directors. *Id.* at 218–19. The court reached its decision based upon both the conflict of interest between the corporation and its directors, and the possibility that confidences obtained from one client during the course of representation might be used to the detriment of the other. *Id.* The court in *Messing v. FDI, Inc.*, 439 F.Supp. 776 (D.N.J.1977), faced with a similar situation, held that the corporation was required to obtain independent counsel, "unshackled by any ties to the directors", to advise it of its most favorable course of action. *Id.* at 782; *see also In re Oracle Securities Litigation*, 829 F.Supp. 1176, 1188–89 (N.D.Cal.1993).

Finally, in *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir.1993), the Third Circuit was faced with a factual scenario similar to the present action. After the settlement of consumer fraud claims brought by the Pennsylvania Attorney General against Bell Atlantic, a group of shareholders made a demand on Bell Atlantic's board to seek recovery from those responsible for causing the losses. The board formed a special committee, which included independent counsel, to investigate the allegations. The committee recom-

mended that the board reject the demand as not in the corporation's best interest. The committee's recommendation was adopted, and the shareholders instituted a derivative action against Bell Atlantic and its directors. After the shareholders and the directors reached a proposed settlement, a second group of shareholders filed suit and objected to the settlement terms. The district court denied their objections and approved the settlement.

■ On appeal the court addressed the issue of whether the settlement was invalid based on the fact that counsel represented both the corporation and its directors in the derivative action. The court first conducted an historical overview of the law in this area, citing what it identified as a "representative observation" of one commentator:

There is some conflict as to the propriety of an attorney or law firm simultaneously representing a corporation and its officers and directors in a stockholders' derivative action. But the modern view is that it is generally improper due to conflict of interests for counsel to attempt to represent the corporation, on whose behalf the action has been instituted, while also representing the individuals charged with harming the corporation for their wrongful conduct.

*Id.* at 1316 (citing 13 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 6025 at 442 (perm. ed. rev. vol. 1991)). However, the court noted that " 'independent counsel may not be required if the derivative claim is obviously or patently frivolous.' " *Id.* (citing Fletcher, *Fletcher Cyclopedia* § 6025, at 443). The court then turned to the Model Rules of Professional Conduct to determine whether dual representation was appropriate.[2]

■ Pursuant to MRPC 1.13, "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents", and when "representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constit-

---

2. "The ethical standards imposed upon attorneys in federal court are a matter of federal law", and therefore, "[w]e look to the Model Rules of Professional Conduct to furnish the appropriate ethi-

cal standard." *Id.* (citing *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1407, 1413 (E.D.N.Y.1989), *aff'd*, 907 F.2d 1295 (2d Cir. 1990)).

uents, subject to the provisions of Rule 1.7." American Bar Ass'n, *Annotated Model Rules of Professional Conduct* 1.13(a), (e).[3] In *Bell Atlantic,* the court relied upon the commentary to Rule 1.13, which provides, in relevant part, that:

> The question can arise whether counsel for the organization may defend [a derivative] action. The proposition that the organization is the lawyer's client does not alone resolve the issue. Most derivative actions are a normal incident of an organization's affairs, to be defended by the organization's lawyer like any other suit. *However, if the claim involved serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board.* In those circumstances, Rule 1.7 governs who should represent the directors and the organization.

*Id.* at 1316 (citing American Bar Ass'n, *Annotated Model Rules of Professional Conduct* ) (emphasis added). Applying this standard to the facts before it, the court determined that "serious charges of wrongdoing have not been levelled against the individual defendants", and that Plaintiffs alleged only a breach of the fiduciary *duty of care,* not a breach of the directors' *duty of loyalty. Id.* Thus, the court held that independent counsel was not required, and affirmed the district court's approval of the settlement. The underlying rationale for the court's decision in *Bell Atlantic* conclusively establishes that Keystone must retain independent counsel in the present case.

Like the shareholders in *Bell Atlantic,* the Plaintiffs' demand to the bank, to pursue an action against the Directors, was investigated by an independent committee and determined not to be in the best interest of the corporation. In *Bell Atlantic,* the court re-

lied on this fact in reaching its decision, stating that

> [t]his suggests a relative (though not complete) convergence of the individual and corporate interests in defending and settling the litigation. Although not dispositive, it is important that early in the litigation, independent counsel, after undertaking an exhaustive investigation, determined the corporation's interests were more in line with those of the defendants than plaintiffs.

*Id.* In the present case, the Directors focus on this language in arguing that the interests of Keystone and its directors are not in conflict at this point in the litigation because the independent committee determined that Keystone should not pursue legal action. However, the Directors ignore the remainder of the quote from *Bell Atlantic,* which provides that

> [o]f greater significance, however, is the absence of allegations of fraud, intentional misconduct, or self-dealing. *We have no hesitation in holding that—except in patently frivolous cases—allegations of directors' fraud, intentional misconduct, or self-dealing require separate counsel.*

*Id.* (emphasis added). In this case, unlike *Bell Atlantic,* the Plaintiffs claim that the Directors committed fraud (Count V) by concealing the fact that they exceeded the legal lending limit, and self-dealing (Count III) by engaging in willful misconduct that was contrary to Keystone's interests and favorable to their own. Additionally, there is no evidence that the Plaintiffs' claims are "patently frivolous". Thus, under the standard set forth in *Bell Atlantic,* Keystone must retain independent counsel.

■ The Directors' sole argument in opposition to Plaintiffs' motion is that disqualification is premature because the business judg-

---

**3.** Rule 1.7 provides that
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially

limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation.
American Bar Ass'n, *Annotated Model Rules of Professional Conduct* 1.7(a).

ment rule will likely result in dismissal of Plaintiffs' action. They contend that the disqualification issue should be postponed until a motion to dismiss, based on the business judgment rule, is decided.[4] Although the Directors did not cite authority to support this contention, our research has uncovered a case that supports their argument. In *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 658 (N.D.Tex.1978), the court held that

> there is no conflict of interest requiring disqualification in the narrow instance when one law firm represents a derivatively sued corporation and its individually sued directors and the law firm initially files a motion to dismiss on behalf of its clients, does not otherwise participate in the lawsuit, and withdraws from representation of either the corporation or the individual directors when either the motions are overruled or when it becomes necessary to participate in the defense of the corporation and the individual directors. At this stage of the proceedings, when the court must make a determination on whether as a matter of law the defendants should be in the lawsuit, unless it can be shown that an actual conflict exists or that certain confidences are being jeopardized, I think the client's right to select the counsel of his choice outweighs any potential conflict of interest.

*Id.* at 661.

The decision in *Clark* is not without merit. Keystone will be forced to incur additional cost to retain independent counsel and disqualifying Drinker impinges upon Keystone's right to select its own counsel. *Rowen v. LeMars Mutual Insurance Co.*, 230 N.W.2d 905, 915 (Iowa 1975). However, we believe the factual situation in the case at bar dictates that independent counsel be retained by the bank. *See id.* There is a clear divergence of interests between Keystone

and its directors on the face of Plaintiffs' complaint, which weighs against joint representation. *Lewis*, 218 F.Supp. at 239–40. Additionally, permitting Drinker to represent two clients with conflicting interests, even if only until a motion to dismiss is decided, could result in substantial difficulty for all parties and the court. *See, e.g., Shadid v. Jackson*, 521 F.Supp. 87, 89 (E.D.Tex.1981) ("While an actual conflict may not transpire at trial, there would be tremendous hardship imposed on the court and all parties alike should separate counsel have to be retained in the middle of litigation"). Finally, there exists a chance that confidences obtained from one client could be used to the detriment of the other, particularly if the motion to dismiss is denied. *See Cannon*, 398 F.Supp. at 218. In our view the potential for harm requires that Keystone retain independent counsel.

Our decision to grant Plaintiffs' motion to disqualify Drinker, Biddle & Reath from representing Keystone does not, in any way, call into question the good faith of the firm. Rather, in cases such as this, where the potential for conflict is great, the better approach is to require the corporation to obtain independent counsel. *See Bell Atlantic*, 2 F.3d at 1317.[5]

### B. *Retention of Independent Counsel*

 Although not expressly raised by the parties, we will briefly address the manner in which Keystone is to select independent counsel. This issue has produced varying results. At least one court appointed counsel for the corporation itself. *See Rowen*, 230 N.W.2d at 916. Other courts have declined to appoint counsel, or direct the corporation how to do so, irrespective of the fact that the directors who were defendants were involved in the decision-making process. *See, e.g.,*

---

**4.** We do agree that the business judgment rule presents an enormous hurdle for the Plaintiffs, particularly in light of the fact that a special committee and independent counsel were retained after Plaintiffs' demand was made. However, as set forth below, we do not find that Plaintiffs' motion for disqualification is premature. Additionally, the Directors have not yet filed a motion to dismiss.

**5.** It is unclear whether Plaintiffs seek to disqualify Drinker from representing *any* Defendant in this litigation, or whether they merely seek to prevent the firm from representing Keystone. In any event, there is nothing to prevent Drinker from continuing to represent the Directors. *See Lewis*, 218 F.Supp. at 239. Our decision requires only that Drinker withdraw its representation of Keystone and LVNB.

*Cannon,* 398 F.Supp. at 220; *Lewis,* 218 F.Supp. at 240. However, we believe the most suitable procedure was adopted by the court in *Messing.*

In that case, the corporation appointed an ad hoc committee of two non-defendant directors, and indicated that, upon court order, it would have the ad hoc committee select independent counsel. The court, without approving or disapproving of the corporation's proposal, determined that the corporation should

> resolve this problem as it would any other issue as to which the existence of interested directors renders the usual corporate decision-making process unavailable.... It is the duty of the directors, in this as in other matters, to act in the corporation's best interest. If they are disqualified from acting on this or on any other matter, then it is for them, in the first instance, to devise a method to accommodate the need to continue the corporate enterprise while refraining from participating in any corporate decision in which they might have a personal interest. They act, or fail to act, at their peril.

*Messing,* 439 F.Supp. at 783–84. We also will not appoint counsel [6], nor will we dictate how Keystone chooses its new attorneys. Rather, Keystone should select independent counsel in the manner it would act in any other circumstance where a conflict of interest exists.

We will issue an appropriate Order.

### ORDER

AND NOW, this 10th day of July, 1995, upon consideration of the Plaintiff's motion for disqualification, filed May 19, 1995, it is Ordered that:

1. The motion is granted insofar as it seeks disqualification of Drinker, Biddle & Reath from representing Keystone Heritage Group, Inc. or Lebanon Valley National Bank.

2. Keystone Heritage Group, Inc. and Lebanon Valley National Bank shall retain independent counsel in accordance with

the analysis set forth in the accompanying memorandum. New counsel should be retained within fifteen (15) days hereof.

---

6. "Of course, the directors may request this or any other court with jurisdiction over the matter to relieve them of this duty." *Messing,* 439 F.Supp. at 783.