**FIASILI HALECK, RAYMOND M. McMOORE, as SESE McMOORE on behalf of themselves and as shareholders of TRT, Inc., Plaintiffs,**

**v.**

**TRT, Inc., AMERICAN SAMOA 2002, Inc., AGAOLEATU C. TAUTOLO, AGAESE ACE TAGO, MURRAY R. DRAKE, RAYMIE P. SNOW, and DOES I-XX, Defendants.**

High Court of American Samoa
Trial Division
CA No. 20-02

June 27, 2003

Before RICHMOND, Associate Justice, LOGOAI, Chief Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiffs, Charles V. Ala' ilima
 For Defendants, William H. Reardon, Dean Hansell and Devin A. McRae, Pro Hac Vice

## ORDER GRANTING MOTION TO DISQUALIFY COUNSEL FROM REPRESENTING BOTH CORPORATE AND INDIVIDUAL DEFENDANTS

The Plaintiffs, shareholders of Defendant TRT, Inc. ("TRT"), brought a shareholder's derivative suit alleging, *inter alia*, that Defendant Agaoleatu Tautolo ("Agaoleatu"), a director of both TRT and Defendant American Samoa 2000, Inc. ("AS2000"), breached his fiduciary duty to

the corporations.[1] They now move to disqualify the attorneys from representing both the corporations and the individual defendants, as directors of the corporations.

## I. BACKGROUND

For purposes of this motion a little background is needed. Count four in Plaintiffs' complaint is directed to Agaoleatu, for alleged breach of his fiduciary duty as a director of TRT and AS2000 and as the controlling officer of TRT. Defendants themselves concede, perhaps unintentionally, that count four alleges that Agaoleatu "engaged in self-dealing, which implicates [his] *duty of loyalty*." (*See* Defs.' Mot. for J. on the Pleadings at 4) (emphasis added). Furthermore, the same attorneys represent all Defendants: the two corporations, TRT and AS2000, and the four individual directors, Agaoleatu, Agaese Ace Tago, Murray R. Drake, and Raymie P. Snow.

## II. DISCUSSION

Plaintiffs assert that the attorneys of record should be disqualified from representing the corporations because the interests of the corporations and the individual Defendants are inherently adverse. They do not object, however, to the attorneys continuing representation of the individual directors. Defendants counter that there is no conflict of interest and that their attorneys should be allowed to stay on the case. They make other arguments, which we will address below.

■ In American Samoa, the conduct of attorneys is governed by the American Bar Association Model Rules of Professional Conduct. *See* H.C.R. 104. We must look to those rules to determine whether a conflict exists. Representation of corporations is dealt with in Rule 1.13, which states, *inter alia*, "[a] lawyer representing an organization may also represent any of its directors, officers; employees, members, shareholders or other constituents, subject to the provisions of rule 1.7." MODEL RULES OF PROF'L CONDUCT R. 1.13(e). This section, however, addresses lawsuits by third parties against the listed individuals. Derivative actions present a more complicated matter.

■ Derivative actions are actions brought by shareholders on behalf of the corporation, not individually. *See In re Oracle Secs. Litigations*, 829 F. Supp. 1176, 1188 (N.D. Cal. 1993). The corporation, "[a]lthough

---

[1] Plaintiffs also seek recovery under the shareholder derivative theory on two other counts and certain relief in their personal capacity, all of which are not relevant to this motion. For a fuller discussion of all the claims, see Order Denying Motion to Dismiss, CA No. 20-02 (Trial Div. September 16, 2002).

named a defendant, . . . is the real party in interest, the stockholder being at best the nominal plaintiff." *Ross v. Bernhard*, 396 U.S. 531, 538 (1970). In some cases, shareholders will seek relief for minor corporate violations, such as mismanagement. *See, e.g., Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1316 (3d Cir. 1993). On the other hand, at times, shareholders may level serious charges against directors of the corporation such as fraud or self-dealing. *See id.* An attorney's role in such situations is contemplated by the Model Rules:

> The question can arise whether counsel for the organization may defend [an action to compel the directors to perform their legal obligations-otherwise known as a derivative action]. The proposition that the organization is the lawyer's client does not alone resolve the issue. Most derivative actions are a normal incident of an organization's affairs, to be defended by the organization's lawyer like any other suit. *However, if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board.* In those circumstances, Rule 1.7 governs who should represent the directors and the organization.

MODEL RULES OF PROF'L CONDUCT R. 1.13(e), cmt. 12 (emphasis added).

Rule 1.7, in turn, provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
 (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
 (2) each client consents after consultation,
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
 (1) the lawyer reasonably believes the representation will not be adversely affected; and
 (2) the client consents after consultation

MODEL RULES OF PROF'L CONDUCT R. 1.7.

The overwhelming majority of courts which have analyzed this issue have taken the commentary of Rule 1.13 to heart, and have required disqualification under Rule 1.7, where at the very least, the shareholders put forth a claim of serious wrongdoing. *See generally Bell Atl. Corp.*, 2

F.3d 1304; *Musheno v. Gensemer*, 897 F. Supp. 833 (M.D. Pa. 1995); *In re Oracle*, 829 F. Supp. 1176; *Messing v. FDI, Inc.*, 439 F. Supp. 776, 782 (D.N.J. 1977); *Cannon v. U.S. Acoustics Co.*, 398 F. Supp. 209 (N. D. Ill. 1975); *Lewis v. Shaffer Stores Co.*, 218 F. Supp. 238 (S.D.N.Y. 1963); *Rogers v. Virgin Land, Inc.*, 1996 W.L. 493174 (D.V.I.); *Forrest v. Baeza*, 67 Cal. Rptr. 2d 857 (1997); *Rowen v. Le Mars Mutual Insurance Co. of Iowa*, 230 N.W.2d 905 (Iowa 1975); *Tydings v. Berk Enterprises*, 565 A.2d 390 (Md. App. 1989); *Garlen v. Green Mansions, Inc.*, 193 N.Y.S.2d 116 (1959).[2]

■ As the defendants concede, count four of the complaint puts forth a serious charge of self-dealing and breach of duty of loyalty, raising the concerns of conflict and warranting disqualification. One possible exception to this disqualification arises when a case is "patently frivolous." *See, e.g., Bell Atl. Corp.*, 2 F.3d at 1317. At this stage, however, having already denied Defendants' motion to dismiss, it is clear that the lawsuit is not frivolous.

Defendants have cited only two cases in support of their position. The first is an unpublished appellate decision from Hawaii, *Retotal v. Hawaii Ballroom Dance Ass'n*, 2002 Haw. App. LEXIS 34, which relies wholly on Defendants' second case, *Robinson v. Snell's Limbs and Braces of New Orleans, Inc.*, 538 So. 2d 1045 (La. App. 1989). Such dearth of authority is not convincing. Moreover, in *Retotal*, the derivative action sought only an accounting, which standing alone does not constitute a "serious" allegation warranting dismissal under even the majority rule.

Defendants argue three other points of contention. First, they claim that Plaintiffs' motion is untimely, and they have thus waived their right to object. At most, Plaintiffs have been aware of counsels' dual

---

[2] *In re Oracle* also provides multiple citations to treatises and articles supporting the same proposition. *In re Oracle*, 829 F. Supp. at 1188-89 (citing 13 WILLIAM M. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 6025, at 442 (perm. Ed. Rev. vol. 1991); *Note, Developments in the Law--Conflicts of Interest in the Legal Profession*, 94 HARV. L. REV. 1244 (1981), G. Dent, *The Power of Directors to Terminate Shareholder Litigation; The Death of the Derivative Suit?*, 75 NW. U. L. REV. 96 (1980); *Note, Disqualification of Corporate Counsel in Derivative Actions: Jacuzzi and the Inadequacy of Dual Representation*, 31 HASTINGS L. J. 347 (1979), *Note, Derivative Actions—Bowen v. Lemars Mutual Insurance Co.—Disqualification of Corporate Counsel and Appointment of Independent Counsel*, 2 J. CORP. L. 174 (1976); *Note, Independent Representation for Corporate Defendants in Derivative Suits*, 74 YALE L. J. 524 (1965); New York City Bar Association Committee on Professional and Judicial Ethics, *Opinion 842*, 15 Record of NYCBA 80 (1960)).

representation of the two corporations and Agaleatu for over a year, when counsel Reardon filed a motion to dismiss on behalf of all these Defendants on April 9, 2002. Plaintiffs' motion to disqualify was not submitted until April 10, 2003. But, because conflict is not an issue in cases where the lawsuits are "patently frivolous," it was in everyone's interest to await a decision on the motion to dismiss. *See Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 658, 661 (N.D. Tex. 1978) (no conflict before motion to dismiss is decided), contrast *Musheno*, 897 F. Supp. at 838. Now that we have ruled, counsel and the corporation can take the appropriate steps to comply with the Model Rules. In any event, we do not deem the delay to be inexcusable, i.e., "extreme in terms of time and consequence." *Forrest*, 67 Cal. Rptr. 2d at 865.

█ Next, Defendants' argue that Plaintiffs' lack standing to move to disqualify. Specifically, once again relying on *Retotal*, they argue that Plaintiffs are non-client litigants and "only under certain, narrowly defined, circumstances would a non-client litigant have standing to move to disqualify opposing counsel." *Retotal*, at 58 (quoting *Decaview Distribution Co., Inc. v. Decaview Asia Corp.*, 2000 W.L. 1175583, at *8 (N. D. Cal. 2000)). But Plaintiffs, as shareholders, are technically clients of corporate counsel. Indeed, all the parties to this litigation are--that is part of the problem. Defendants' classification of Plaintiffs as non-clients is inaccurate.

█ Finally, Defendants argue that the motion is tactical, and brought solely to harass. But we find Plaintiffs' reasons to be credible: they object to the use of corporate funds to pay for the defense of individual Defendants when the conduct alleged is contrary to the corporation's best interest. We impute no improper purpose to their motion.

## III. CONCLUSION AND ORDER

█ All counsel of record for Defendants will withdraw as counsel for TRT and AS2000. However, we will not take it upon ourselves to appoint new counsel. This task we leave to the corporations. *See Musheao*, 897 F. Supp at 838-39; *Tydings*, 565 A.2d 390. *But see Rowen*, 230 N.W.2d at 916 (appointing counsel).

It is so ordered.