**In re SILVER OAK HOMES, LTD., Debtor.**

**Susan O'Master HALLOCK, et al., Plaintiffs,**

v.

**KEY FEDERAL SAVINGS BANK, et al., Defendants.**

Bankruptcy No. 86–5–2688–JS.
Adv. No. A90–0276–JS.

United States Bankruptcy Court,
D. Maryland.

April 14, 1994.

Gerson B. Mehlman, Mehlman & Lax, Stephen L. Snyder, Baltimore, MD, for plaintiffs.

Gerald C. Ruter, Baltimore, MD, for Maxwell Moulton.

Robert J. Carson, Zvi Guttman, Smith, Somerville & Case, Baltimore, MD, for George W. Liebmann and George W. Liebmann, P.A.

Mark H. Friedman, Friedman & MacFadyen, Marc Seldin Rosen, Baltimore, MD, for Key Federal Sav. Bank.

Joel I. Sher, Shapiro and Olander, Baltimore, MD.

*MEMORANDUM OPINION GRANTING MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT*

JAMES F. SCHNEIDER, Bankruptcy Judge.

While the debtor's Chapter 11 bankruptcy case was pending in this Court, the nondebtor plaintiffs filed the instant "Complaint and Prayer for Jury Trial" in the state court against the nondebtor defendants (the debtor's attorney, its president and secured creditor) for alleged acts and omissions that occurred in the bankruptcy case relating to a stipulated agreement approved and later modified by this Court. The defendants removed the suit to the bankruptcy court and filed motions for summary judgment. For the reasons stated, the motions for summary judgment will be granted and the complaint will be dismissed.

*FINDINGS OF FACT*

1. The individual plaintiffs are Susan O'Master Hallock and her husband, Richard L. Hallock. The other plaintiffs, Hallock, Inc., Parkmont Developers, Inc., and Waterfront Development Co., are Maryland corporations, owned by Mrs. Hallock and controlled by Mr. and Mrs. Hallock. Richard Hallock, Susan O'Master Hallock and Hallock, Inc., were real estate brokers and/or agents.

2. The debtor, Silver Oak Homes, Ltd., is a Maryland corporation. The cause of action which forms the gravamen of the suit arose out of actions allegedly taken by the defendants in the bankruptcy court in January and February, 1990, during the pendency of Silver Oak's Chapter 11 bankruptcy case.

3. At all relevant times, Mr. and Mrs. Hallock controlled Silver Oak Homes, according to the uncontroverted facts set forth in the affidavit of the defendant, Maxwell C. Moulton, president of the debtor. Exhibit 28 to memorandum [P. 49].

4. On December 10, 1986, Silver Oak and an affiliated corporation, Old Line Homes of Maryland, Ltd., filed voluntary Chapter 11 bankruptcy petitions in this Court [Cases 86–5–2688 and 86–5–2687, respectively]. Silver Oak characterized its business to be that of a "builder/developer." Statement of Affairs [P. 11].

5. Under the name of "Mary Sue O'Master," Susan O'Master Hallock is a Chapter 7 debtor in a bankruptcy case which has been pending in this Court since May 5, 1986, when it was originally filed as a voluntary Chapter 11 proceeding (Case No. 86–B–0919). Before the filing of Silver Oak's bankruptcy case, and using the name "Mary Sue O'Master," Mrs. Hallock was employed as a realtor by Hallock, Inc., Old Line Homes, and Silver Oak Homes. O'Master Statement of Financial Affairs [P. 21] (filed in Case No. 86–B–0919).

6. In April, 1987, Silver Oak Homes filed two applications [PP. 28 and 34] in its bankruptcy case to employ Mrs. Hallock, then known as "Mary Sue O'Master," as real estate agent in connection with the debtor's sale of specific parcels of real estate owned by the debtor in a subdivision known as "Franklin Manor." Neither application contained an affidavit disclosing Mrs. Hallock's connections with the debtor or a statement that she was a disinterested person. Nevertheless, this Court signed orders that approved both applications [PP. 32 and 35]. Neither Richard Hallock nor Hallock, Inc.,

were ever appointed by this Court to serve as realtors on behalf of Silver Oak.

7. Silver Oak owned the following real estate, subject to a first priority security interest held by Key Federal Savings Bank:

Chesapeake Cove [a/k/a "Snug Harbor"]
12 lot subdivision
Snug Harbor Road
Shadyside, Maryland 20764

Franklin Cove
39 lot subdivision
Carvel, Garrett & Fairfax Streets
Franklin Manor Beach
Churchton, Maryland 20733

Fox Chapel
31 lot subdivision
Route 408
Lothian, Maryland

The Fox Chapel property was subject to second and third priority security interests of Ronald and Mary Kindness of Rockville, Maryland. Silver Oak Schedules A–2, B–1 [P. 11].

8. During the pendency of Silver Oak's Chapter 11 case, Key Federal and the debtor were engaged in almost constant litigation, which included three motions for relief from stay [Motions M87–1166B, M88–0662B and M88–0839B] and a motion to dismiss the bankruptcy case. The debtor filed two complaints against Key Federal to enjoin foreclosures [Adversary Proceedings A89–0107–JS and A89–0200–JS] and this Court granted injunctive relief to the debtor to permit private sales of its real estate to be consummated. In Adversary Proceeding No. A89–0107–JS, Silver Oak and Key Federal filed a consent order [P. 13] which authorized the debtor to sell Fox Chapel lots 26 through 31 to Delmarva Homes, Ltd., or to its assignee, free and clear of liens, with certain conditions.

9. In December, 1987, the defendant, George W. Liebmann, a Maryland attorney, began filing pleadings in the bankruptcy court as counsel to Silver Oak and Old Line, in place of former counsel, James Koch. On December 7, 1987, Mr. Liebmann filed a disclosure of compensation [P. 58] that indicated the source of his compensation would come from "principals of the debtor." On August 29, 1988, Mr. Liebmann disclosed a payment to him in the Silver Oak case of $2,700 by Susan O'Master Hallock, after exhaustion of a prior retainer, for services rendered as attorney for the debtor-in-possession [P. 105]. However, it was not until November 14, 1988 that Mr. Liebmann filed an application to be appointed counsel to the debtor [P. 117], which this Court approved by order [P. 120] dated November 29, 1988. The application was supported by an affidavit in which Mr. Liebmann attested to his disinterestedness and certified "that I have not represented any creditor of this debtor for more than one year prior to the filing of this case nor any other party in interest in this case." Affidavit [P. 118]. A subsequent fee application [P. 133] filed by Mr. Liebmann on August 1, 1989, disclosed that he had received a $5,000 retainer and other payments totalling $9,437.40 paid by Susan O'Master Hallock for services rendered to the debtor-in-possession, for which she would be entitled to receive reimbursement from the bankruptcy estate.

10. On January 29, 1990, this Court approved a stipulation in the Silver Oak case between Key Federal and the debtor entitled "Stipulation and Order Relating to Claims of Key Federal Savings Bank" [P. 164], the complete text of which is set forth in Appendix I to this opinion. The stipulation was signed by Mark H. Friedman, Esquire, as counsel to Key Federal; Maxwell C. Moulton, as president of Silver Oak Homes; George W. Liebmann, as counsel to Silver Oak Homes, the debtor in possession; Susan O'Master Hallock, individually and on behalf of Waterfront Development Co., Inc.; Ronald J. Kindness and Mary M. Kindness; and Richard L. Hallock. Key Federal agreed that "the debtor may sell the six (6) remaining properties [in Fox Chapel] to its proposed buyer [Delmarva] or its assignee [Parkmont] as soon as possible" and that the debtor should have "an exclusive period of forty-five (45) days from the date of entry of this stipulation and order to allow the debtor to sell and settle the said six (6) lots." Waterfront Development Co. agreed to convey 18.9 acres in the Snug Harbor subdivision to Key Federal as a condition required to obtain county approval for the development and

sale of twelve Snug Harbor lots by the debtor. Provided that Key Federal were paid $36,750 per lot for each of the first six lots, and $36,000 for each of the remaining six lots, Silver Oak, Mr. Moulton, Mr. and/or Mrs. Hallock or their assigns would have the right to purchase the twelve lots and the 18.9 acres "without further approval" from Key. Stipulation [P. 164].

11. On February 13, 1990, the debtor and Key Federal filed a joint "Application to Employ Real Estate Agent" [P. 168], the complete text of which is set forth in Appendix II. The application requested the appointment of O'Connor, Piper & Flynn as real estate agent for six remaining Fox Chapel lots with a commission of 6%. The application recited the following facts: (a) that the debtor had previously sold 14 lots in Fox Chapel to Delmarva Homes, Inc., or its assignee pursuant to a contract of sale dated December 31, 1988 providing for settlement by February 28, 1989; (b) that the notice of sale provided for payment of a 6% real estate commission to Hallock, Inc., as real estate agent; (c) that the contract with Delmarva had expired and that several settlements had taken place by consent orders entered into by the debtor, Key Federal and Ronald and Mary Kindness, secured creditors; (d) that the stipulation dated January 29, 1990 permitted but did not require the debtor to sell the remaining six Fox Chapel lots to Delmarva or its assignee; (e) that information recently acquired by the debtor indicated that sales to Delmarva using Hallock, Inc. as realtor were not in the interests of the debtor or its creditors, and that Key Federal and the Kindnesses were in agreement with that opinion; (f) that such information included the filing of a Chapter 11 bankruptcy petition by Delmarva on January 26, 1990 [Case No. 90–5–0313–SD], the fact that Richard Hallock held a 50% ownership in Delmarva, that Richard Hallock was thus acting as both the debtor's real estate agent and as principal in an entity purchasing property from the debtor, and that Richard Hallock had canceled the settlement on the six lots, among other allegations. Thereafter, this Court authorized the appointment of O'Conor, Piper & Flynn as real estate agent by order [P. 170].

12. Mr. and Mrs. Hallock admit that they received the February, 1990 application. They prepared an objection which they sent to Mr. Liebmann, Mark Friedman (Key Federal's counsel) and the office of the U.S. Trustee. Exhibit 31 to Liebmann memorandum [P. 49]. However, the Hallocks never filed an objection with the bankruptcy court.

13. Private sales of five Fox Chapel lots were noticed by the debtor [PP. 175, 176, 177]. Key Federal filed an objection to the sale of two of the lots [P. 178]. On April 10, 1990, the debtor reported that the sales of four lots in Fox Chapel had been consummated [P. 182].

14. On June 18, 1990, Key Federal and the debtor submitted a consent order [P. 187] by which they agreed, among other things, that the terms of the January 29, 1990 stipulation relating to the Snug Harbor development with respect to proceeds of sale would continue to govern the rights of Key and Silver Oak. The complete text of the consent order is set forth in Appendix III.

15. On June 20, 1990, during the pendency in this Court of Silver Oak's Chapter 11 case, the plaintiffs filed the instant lawsuit against the defendants in the Circuit Court for Baltimore City, without first obtaining leave of the bankruptcy court. The defendants removed the complaint to this Court by application filed on July 19, 1990. The plaintiffs' motion to remand [P. 10] was denied by the U.S. District Court [Kaufman, D.J.], by order dated October 14, 1991 upon the report and recommendation of this Court [P. 42] dated June 26, 1991.

16. The complaint, which contained six counts, alleged actual and constructive fraud by all defendants; negligence and breach of fiduciary duty by Mr. Liebmann and his professional association; and breach of contract and intentional interference with contract by Key Federal. Each count sought compensatory damages in the amount of $5 million and punitive damages in the amount of $100 million. The complaint prayed a trial by jury.

17. The gravamen of the complaint is the court-approved repudiation by the defendants of the stipulation executed by Key Federal and the debtor and approved by this

Court on January 29, 1990, which related to a sale of the debtor's real estate. The complaint alleged that Key Federal, Mr. Moulton and Mr. Liebmann breached the stipulation by declining to sell the Fox Chapel lots to Parkmont and by substituting a different realtor in place of Hallock, Inc. According to the complaint, Hallock, Inc. lost its real estate commissions, Waterfront Development lost the 18.9 acres that it had conveyed, and the Hallocks lost the right to build houses in Snug Harbor.

18. The complaint further alleged that at the time the stipulation was executed, Mr. Liebmann represented not only the debtor but also Mr. and Mrs. Hallock and the Hallock entities. It is on the basis of his alleged negligence in representing the nondebtor plaintiffs in the bankruptcy court that he is being sued for breach of fiduciary duty in this suit which was filed originally in the state court.

19. The plaintiffs have insisted upon their right to file the instant complaint in the state court, without first applying to the bankruptcy court for its permission:

At the hearing on May 15, 1992, the Court indicated that it was disturbed by the fact that the plaintiffs filed a suit for damages in State Court rather than filing something before this Court. Initially, plaintiffs would respectfully note that they did not believe that this Court had jurisdiction over their claims against the defendants. But even setting aside that consideration, plaintiffs submit that there is simply no legal basis to issue summary judgment against them based on the fact that plaintiffs chose to file a suit for damages in State Court ...

What seems to be at the heart of this Court's discomfort is the fact that the plaintiffs chose to file an action for damages in State Court rather than seeking some sort of relief from this Court. The fact that plaintiffs chose to follow the route they chose is no more of a waiver than a plaintiff's decision to file an action in State Court rather than Federal Court. Plaintiffs herein demand damages, both compensatory and punitive, for what was done to them by defendants. They certainly have and had a right to pursue those claims for damages. No insult or disrespect was or is intended to this Court, but certainly Bankruptcy Court is not the first forum one thinks of when requesting a jury to which to present claims for damages due to, *inter alia*, fraud and professional negligence. As evidenced by this Court's Report and Recommendation of June 21, 1991, this Court has expressed an interest in keeping a case before it that alleges fraud and chicanery by officers of the Court. The plaintiffs should not be faulted or condemned for seeking redress for these wrongs in a forum whose business it is to mete out such types of relief . . .

Plaintiff's memorandum, pp. 12–13, 18 [P. 67].

## CONCLUSIONS OF LAW

### THIS COMPLAINT WAS IMPROPERLY FILED WITHOUT OBTAINING LEAVE OF THIS, COURT IN ADVANCE

■ 1. The failure of the plaintiffs to apply to this Court for leave to file the instant lawsuit against the debtor's president and counsel deprived the Circuit Court for Baltimore City of jurisdiction to entertain it, *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881), for which the plaintiffs may be held in contempt of the stay. *Baptist Medical Center of New York v. Singh (In re Baptist Medical Center )*, 80 B.R. 637, 643 (Bankr. E.D.N.Y.1987), citing *In re Kish,* 41 B.R. 620 (Bankr.E.D.Mich.1984).

■ 2. "It is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *Allard v. Weitzman (In re De-Lorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993).

3. Under the Bankruptcy Code, a Chapter 11 debtor in possession enjoys the same status as a Chapter 11 bankruptcy trustee, is invested with most of the same powers and is subject to the same fiduciary duties. 11 U.S.C. § 1107(a) (1993). Indeed, as used in

the bankruptcy rules, the word "trustee" includes a Chapter 11 debtor in possession. Fed.R.Bankr.P. 9001(10).

■ 4. "We hold as a matter of law, counsel for trustee, court-appointed officers who represent the estate, are the functional equivalent of a trustee, where as here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets." *DeLorean,* 991 F.2d at 1241.

■ 5. "It is well settled that [a debtor's attorney] cannot be sued in state court without leave of the bankruptcy court for acts done in his official capacity and within his authority as an officer of the Court." *Mangun v. Bartlett (In re Balboa Improvements, Ltd.* ), 99 B.R. 966, 970 (9th Cir. BAP 1989), citing *U. and I. Inc. v. Fitzgerald (In re Campbell* ), 13 B.R. 974, 976 (Bankr.D.Idaho 1981).

6. Section 959(a) of the Judicial Code (Title 28 of the U.S.Code) provides a limited exception to the foregoing rule.

(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his rights to trial by jury.

*Id.*

7. However, George W. Liebmann, counsel to the debtor in possession, and Maxwell C. Moulton, president of the debtor in possession, are being sued for their alleged acts and omissions in the liquidation of the assets of the bankruptcy estate as opposed to the operation of the debtor's business. The debtor was engaged in the development and sale of finished lots. The proposed bulk sale to Delmarva of the debtor's lots in Fox Chapel was not in the ordinary course of the debtor's business and amounted to a court-ordered liquidation. The later sales of individual lots by agreement of the debtor and Key Federal in the form of sales free and clear of liens were also out of the ordinary course of the debtor's business. The sales were subject to objection by interested parties and required court approval. The land was sold by the debtor as unimproved lots without amenities or enhancement of any kind by the debtor. From the beginning, the debtor indicated that its case was actually a liquidating Chapter 11. Therefore, the defendants Liebmann and Moulton were not carrying on the debtor's business. Instead, they were liquidating the debtor's business, and the foregoing exception to the "Barton rule" is not applicable to the instant complaint which is based upon an alleged "breach of fiduciary duty in the administration of a bankruptcy estate." *Balboa,* 99 B.R. at 970. *Cf. Missouri Department of Natural Resources v. Valley Steel Products Co., Inc. (In re Valley Steel Products Co., Inc.*), 157 B.R. 442, 448 (Bankr.E.D.Mo.1993); *Walker v. Maury County (Matter of Scott Housing Systems, Inc.*), 91 B.R. 190, 196 (Bankr. S.D.Ga.1988) (Section 959(a) does not apply when trustee or debtor in possession is merely liquidating debtor's assets). The plaintiffs were required to obtain leave of this Court before filing the instant suit, and § 959(a) is not applicable in this case as an exception to the rule.

8. "Summary judgments are appropriate in those cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to a judgment as a matter of law." *Miller v. F.D.I.C.,* 906 F.2d 972, 973 (4th Cir.1990); Fed. R.Civ.P. 56. Because it is beyond dispute that the plaintiffs filed this lawsuit without permission of this Court, the defendants are entitled to a judgment as a matter of law for this reason alone. In addition, it appears that defendants are also entitled to have the complaint dismissed on the merits.

*UNFOUNDED ALLEGATIONS AGAINST GEORGE LIEBMANN FOR BREACH OF FIDUCIARY DUTIES TO THE PLAINTIFFS*

■ 9. With respect to the plaintiffs' allegation that George W. Liebmann breached his fiduciary duties to them as their counsel, there is absolutely no evidence in the record to support the claim that he was represent-

ing the plaintiffs at the same time that he represented the debtor. There is no indication that he performed any services or took any action on the plaintiffs' behalf during the period in question. The dilemma of every attorney who represents a corporate debtor in the bankruptcy court is that counsel must deal with the corporation's human agents, attempt to distinguish between their interests and those of the corporation in dispensing advice, and take no actions beneficial to the insiders that are adverse to the client. That it is the insiders of the debtor and other entities controlled by them complaining about Mr. Liebmann indicates that he violated no duty to his client, the debtor, Silver Oak Homes. As the American Bar Association Model Code of Professional Responsibility Ethical Consideration 5–18 provided:

> A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interest and his professional judgment should not be influenced by the personal desires of any person or organization. Occasionally a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present.

*Id.*, cited in *Tydings v. Berk Enterprises,* 80 Md.App. 634, 640–41, 565 A.2d 390 (1989).

10. The record discloses that George Liebmann was compensated as counsel for Silver Oak Homes by Susan O'Master Hallock. [Findings of Fact Nos. 20 and 21.] Therefore, the plaintiffs cannot prevail in their argument that Mr. Liebmann violated any fiduciary duty in representing them throughout the instant case because, even assuming for the sake of argument that he simultaneously represented them and the debtor, the plaintiffs implicitly consented to any such dual representation. As persons in control of the debtor, the Hallocks were in a position to consent to such dual representa-

tion on behalf of themselves and the corporation. They will not now be heard to complain about a situation they caused. *See* Md.Rule of Professional Conduct 1.7.

11. Likewise, the plaintiffs cannot prevail against Mr. Liebmann as so-called "third party beneficiaries" on a theory of negligence because they cannot prove that he owed them any duty as insiders of his corporate client. *Cf. Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618 (1985). To the extent that they were undisclosed clients, they are precluded from recovering on a cause of action arising from their nondisclosure to the bankruptcy court.

12. A corporate debtor's counsel who exercised independent judgment in pursuing a course of action on his client's behalf in the bankruptcy court, with court approval after counsel set forth justification for such action, is not subject to a state court suit for breach of fiduciary duty brought by the corporate insiders while the Chapter 11 bankruptcy case was pending. This is particularly true in the instant case, where the plaintiffs never filed a single objection in the bankruptcy court to counsel's alleged misconduct. While the bankruptcy case is pending, the bankruptcy court has sole jurisdiction to consider alleged conflicts of interest charged against debtor's counsel. Such a proceeding is a core proceeding within the subject matter jurisdiction of the bankruptcy court. *Honigman, Miller, Schwartz & Cohn v. Weitzman (In re DeLorean Motor Co.),* 155 B.R. 521, 525 (9th Cir. BAP 1993) (creditor's state law malicious prosecution action against trustee's attorneys for fraudulent conveyance suit that they commenced as officers of estate, to administer estate and collect its assets, was inextricably tied to questions concerning proper administration of estate and was "core proceeding," and bankruptcy court should not have abstained from hearing such action).

*NO RIGHT TO TRIAL BY JURY ON COMPLAINT CHARGING BREACH OF FIDUCIARY DUTY BY DEBTOR'S COUNSEL*

13. The plaintiffs styled this lawsuit as a "Complaint and Prayer for Jury Trial" when they improperly filed it in the

Circuit Court for Baltimore City. However, it has been held that such a complaint when properly filed in the bankruptcy court for breach of fiduciary duty by a court-appointed fiduciary does not give rise to a right to jury trial. The cause of action is an equitable one, within the equitable powers and jurisdiction of the court, to which the right to trial by jury does not attach. *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson )*, 5 F.3d 750, 757–58 (4th Cir.1993). *Accord, Martino v. Weisman (In re Elegant Equine, Inc.)*, 155 B.R. 189, 192 (Bankr. N.D.Ill.1993) ("every court to consider this issue in the context of bankruptcy proceedings has held that breach of fiduciary duty actions are equitable.").

### NO EVIDENCE OF A CONSPIRACY ON THE PART OF DEFENDANTS

14. After full and complete discovery, no evidence has been furnished to the Court of a conspiracy among the defendants to damage the plaintiffs. As between Messrs. Liebmann and Moulton on the one hand and Key Federal on the other, the record in the various cases indicates the existence of a continuous, long-term, adversarial relationship between the lender against the debtor, Mr. Moulton as president of the debtor, and Mr. Liebmann as debtor's counsel, including a motion to dismiss the case and motions for relief from automatic stay filed by Key Federal, and complaints to enjoin Key Federal from foreclosing filed by the debtor.

15. This Court approved the stipulation of January, 1990 as a settlement of litigation and an accommodation or adjustment of the rights of creditors, in the best interests of the estate. *Matter of Energy Co-op., Inc.*, 886 F.2d 921, 927 (7th Cir.1989). However, the failure to disclose the plaintiffs' conflicts of interest, of which the Court was unaware, rendered the stipulation subject to attack as violative of the various prohibitions of the Bankruptcy Code. The subsequent appointment of a different realtor to sell property of the estate and the Court's approval of substitute buyers in place of the plaintiffs cured the defects inherent in the stipulation. The provisions of the stipulation were severable, and after the legally unsupportable portions

involving the sale of lots to the debtor's insiders were rescinded, Key Federal's agreement allowing the debtor to sell lots survived.

16. By failing to object in the bankruptcy proceeding to these administrative orders of the bankruptcy court, the plaintiffs were precluded from filing suit in the state court for damages allegedly caused by the defendants' bankruptcy court-approved acts. The plaintiffs could have raised such objections "at any time during the pendency of the [bankruptcy] case," because "it is not necessary that [the objector] meet the requirements of F.R.C.P. Rule 59 or 60 in order to be heard" when challenging an administrative order appointing professional persons. *Matter of Sarasota Land Co.*, 59 B.R. 657 (Bankr.M.D.Fla.1986).

### PLAINTIFFS WERE NOT ENTITLED TO PURCHASE ESTATE PROPERTY AND TO BE APPOINTED REALTORS ON BEHALF OF THE ESTATE BECAUSE THEY WERE NOT "DISINTERESTED PERSONS."

16. The employment of professional persons, including realtors, on behalf of a bankruptcy estate is governed by Section 327(a) of the Bankruptcy Code, which provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (1993). *Land West, Inc. v. Coldwell Banker Commercial Group (In re Haley )*, 950 F.2d 588 (9th Cir.1991); *In re Concept Clubs, Inc.*, 125 B.R. 634 (Bankr. C.D.Utah 1991); *In re Channel 2 Associates*, 88 B.R. 351 (Bankr.D.N.M.1988); *In re McConnell*, 82 B.R. 43 (Bankr.S.D.Tex.1987); *In re Roberts*, 80 B.R. 565 (Bankr.N.D.Ga. 1987); *In re Northeast Dairy Co-op. Federation, Inc.*, 74 B.R. 149 (Bankr.N.D.N.Y.1987); *Carlton Real Estate v. Schaffler (In re Yobe )*, 74 B.R. 430 (Bankr.W.D.Pa.1987);

*Eastern Inns of New Hampshire, Inc. v. Indian Head Bank and Trust Co.* · (*In re Eastern Inns of New Hampshire, Inc.*), 72 B.R. 418 (Bankr.D.Me.1987); · *Glick v. Brogan* (*In re Roberts* ), 58 B.R. 65 (Bankr. D.N.J.1986); *In re Clapp,* 36 B.R. 768 (Bankr.D.Haw.1984); *In re Pollock,* 22 B.R. 673 (Bankr.D.Mass.1982).

17. In addition, Bankruptcy Rule 2014(a) specifies the following prerequisites to the employment of professional persons by a bankruptcy estate:

(a) Application for and Order of Employment. An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a Chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed.R.Bankr.P. 2014(a).

18. The failure of the Hallocks and Hallock, Inc. to comply with Section 327(a) by filing applications of employment as real estate brokers to sell the debtor's real estate precludes their maintenance of the present complaint. The stipulation did not authorize them to act as realtors on behalf of the debtor and this Court did not sign an order to approve their employment after the stipulation was approved. Mrs. Hallock's appointment as realtor by this Court in the Silver Oak case in April, 1987, was specifically tied to the sale of certain lots and did not continue in effect after those lots were sold.

19. The plaintiffs were not eligible to serve as the debtor's realtors because they were not disinterested persons who "[did] not hold or represent an interest adverse to the estate." 11 U.S.C. § 327(a) (1993). *Barnett v. Norman* (*In re C.W. Norman* ), 41 B.R. 8 (Bankr.M.D.Ala.1984). Mr. and Mrs. Hallock were insiders of the debtor, 11 U.S.C. § 101(31)(B), as persons who exercised control over the corporation. In addition, Mrs. Hallock was a creditor of the debtor's estate as the payor of the debtor's counsel fees. Mr. Hallock's undisclosed ownership interest in Parkmont and Delmarva precluded those entities from purchasing property of the debtor's estate.

20. The Sixth Circuit held in the case of *Childress v. Middleton Arms, Ltd. Partnership* (*In re Middleton Arms, Ltd. Partnership* ), 934 F.2d 723, 725 (6th Cir.1991), that the equitable powers provided to the bankruptcy court by Section 105 of the Bankruptcy Code do not permit the court to circumvent the explicit prohibitions of Section 327(a) against the appointment of professionals who are interested parties by reason of their status as insiders of a debtor. In addition, the court held that section 1107(b), which excepts a professional person from disqualification for employment by a debtor for the sole reason of having been employed by the debtor prepetition, does not authorize the employment of a real estate agent who was both employed prepetition and who was also an insider of the debtor. *Id.*

21. A similar scenario is present in this case. Mrs. Hallock is an insider of the debtor who· was employed prepetition as a real estate broker or agent for Silver Oak Homes. The fact that her employment was approved by an order entered in her personal bankruptcy case did not authorize her to continue to serve as a professional person after Silver Oak filed its own bankruptcy petition in December, 1986. Her appoint-

ment as realtor by this Court in the Silver Oak case in April, 1987, was tainted by the nondisclosure of her insider status, although the orders appointing her [PP. 32, 35] have not been challenged. To the extent that the stipulation of January, 1990, is being relied upon as granting authority for the employment of the Hallocks and Hallock, Inc. as the debtor's realtors without disclosure to this Court of the Hallocks' insider status, such reliance is misplaced.

22. Furthermore, the failure of the Hallocks and Hallock, Inc. to comply with Bankruptcy Rule 2014 by disclosing all their "connections with the debtor, creditors, any other party in interest, etc.," precludes them from bringing the instant complaint.

23. Hallock, Inc. was not entitled to serve as the debtor's broker and neither Delmarva nor Parkmont was entitled to purchase property of the estate in the absence of full disclosure of their connections with the debtor. The knowledge of the defendants in this regard is immaterial. The disclosure must be made to the Court and serves the function of protecting the integrity of the judicial proceedings.

## OTHER REASONS FOR DISMISSING THE COMPLAINT

24. The reasons set forth by the debtor and Key Federal in their joint application [P. 168] filed on February 13, 1990, without objection by the plaintiffs, fully justified their refusal to sell to Mr. Hallock's entities.

25. Waterfront, Inc. has no cause of action for damages caused by its conveyance of the 18.9 acres because the conveyance was for no consideration, according to the stipulation.

For all these reasons, the defendants' motions for summary judgment will be granted and the instant complaint will be dismissed.

ORDER ACCORDINGLY.

## APPENDIX I

## STIPULATION AND ORDER RELATING TO CLAIMS OF KEY FEDERAL SAVINGS BANK

It is hereby stipulated to by and between the Debtor and Key Federal Savings Bank as follows:

### FOX CHAPEL

1. The debtor may sell the six (6) remaining properties to its proposed buyer or its assignee as soon as possible. Key shall agree to an exclusive time period of forty-five (45) days from the date of entry of this stipulation and order to allow the debtor to sell and settle the said six (6) lots;

2. The relevant parties must execute a second deed of trust at settlement which shall include the three (3) following clauses:

a. The term of the note shall be one (1) year. There shall not be any right to extend the term of the note;

b. If the note is to be assumed or subordinated, notice must be provided to Key at least one (1) week prior to the said assumption or subordination;

c. There shall be a fifteen (15) day cure period.

3. The debtor shall allow Key to complete improvements required by Anne Arundel County by such date as may be required by the County. Key shall exercise diligence and good faith in keeping the cost for such improvements to a minimum, and contemporaneously with entering into any agreement with contractors, engineers or the County, Key shall provide Silver Oak copies of any and all invoices, agreements and memoranda of such agreement if same is not in writing[;]

4. Key shall waive any extension fees it alleges is [sic] due.

### FRANKLIN MANOR

1. The debtor shall allow Key to complete improvements required by Anne Arundel County by such date as may be required by the County. Key shall exercise diligence and good faith in keeping the cost for such improvements to a minimum, and contemporaneously with entering into any agreement with contractors, engineers or the County, Key shall provide Silver Oak copies of any and all invoices and agreements and memorandum of such agreement if same is not in writing[;]

*APPENDIX I*—Continued

2. The debtor, shall on the date of entry of this Order or previously, provide Key with an immediate itemized breakdown of costs[;]

3. Key shall waive any extension fees it alleges is [sic] due.

### KINDNESS MORTGAGE

1. The Kindnesses shall, upon the entry of this Order immediately receive approximately Sixty–Five Thousand Dollars ($65,-000.00) of the monies held in escrow, and Key shall receive approximately Nineteen Thousand ($19,000.00). Any overage or surplus shall be divided pro rata between the parties. The Kindnesses shall receive a mortgage junior to Key's mortgage upon Snug Harbor in the amount of Twenty One Thousand Dollars ($21,000.00) without objection by Key.

### LEGAL FEES AND COSTS

1. Key shall receive from the final proceeds of the sale of the Snug Harbor lots Twenty Eight Thousand Dollars ($28,000.00) to be accepted as payment for attorney fees and costs previously incurred, in lieu of all fees and cost [sic] incurred.

2. Key agrees to allow George Liebmann, Esquire, to receive Seven Hundred and Fifty Dollars ($750.00) from the proceeds of the settlements of each of the six (6) Fox Chapel lots. The monies totalling Four Thousand Five Hundred Dollars ($4,500.00) shall be recouped by Key from the Snug Harbor settlements at the rate of an additional Three Hundred Seventy Five Dollars ($375.00) per lot.

### SNUG HARBOR

1. dfi [an engineering firm] shall provide the attorney for Key, Mark H. Friedman, status reports on a bi-weekly basis. The attorney for Key shall have the right to telephone dfi to review any and all work completed or contemplated;

2. Silver Oak or its assigns shall, for a period of forty-five (45) days after final written approval from Anne Arundel County of the subdivision of the twelve (12) lots, have the exclusive right to sell the twelve (12) lots without any required approval from Key and settle, provided monies are disbursed no later than forty-five (45) days after the county gives final written approval to the subdivision. Key may attempt to sell the said twelve (12) lots at any time after the forty-five (45) day exclusivity period expires;

3. At settlement, Key shall receive Thirty–Six Thousand Seven Hundred Fifty Dollars ($36,750.00) for each of the first six (6) lots and Thirty Six Thousand ($36,000.00) for each of the remaining lots until the debt due Key is fully satisfied;

a. Providing that Key shall receive such amount as specified in paragraph three (3) above, Silver Oak, Moulton, Hallock, O'Master or any of them individually, or their assigns, shall have the right to purchase the twelve (12) lots and the 18.99 acres (referenced in paragraph 4 below) at any time without further approval from Key.

4. The parties hereto have been advised by dfi that additional adjoining land will be necessary in order to obtain approval by the County of the twelve (12) lots, therefore, simultaneously with the signing hereof any and all owners of the adjoining 18.99 acres shall execute a deed to Key. The 18.99 acres (a copy of the metes and bounds description of same being attached hereto and made a part thereof [sic] and identified as attachment "A") adjoining the purported twelve (12) lots as illustrated on the plat prepared by dfi (a copy of said plat being attached hereto, and made a part hereof known as attachment B) and simultaneously with such deed Key shall return the prior deed (a copy of which is attached hereto for identification purposes and identified as attachment "C") to be nullified by the grantor as though such deed never existed. All necessary parties shall join in on the conveyance. With regard to the 18.99 acres deeded to Key, Key shall comply with all requirements by Anne Arundel County and agrees to sign any and all documents including but not limited to plats, applications, variances, deeds, easements, necessary to obtain the approval of the twelve (12) lot subdivision as required by Anne Arundel County; if Key shall elect not to comply with such requirements then Key shall immediately deed 18.99 acres back to the grantor so that the grantor may join in the subdivision process in Key's stead; however such deeding back to the grantor shall

not release the debtor of its mortgage obligation on the twelve (12) lots. If after final approval of the subdivision, it is determined by dfi in conjunction with Anne Arundel County that all of the land adjoining the twelve (12) lots was not necessary to resubdivide the property into twelve (12) lots, Key shall, within thirty (30) days of final written approval from Anne Arundel County of the twelve (12) lots, deed back to the relevant parties that unused portion of the 18.99 acres; such deed shall be for no consideration, and free and clear of any liens or encumbrances other than those that may currently exist or may be caused by the grantor. Simultaneously with the execution of the deed to the adjoining 18.99 acres Maxwell Moulton, Susan O'Master Hallock, and Richard Hallock, their heirs or assigns shall be released by Key of any and all claims of whatever nature and Key shall be released by Moulton, O'Master, and Hallock.

Upon satisfaction of the debt due Key, the second mortgages on Fox Chapel and Franklin Manor Beach lots heretofore and hereafter assigned to Key by Debtor and not applied to such debt shall immediately be assigned back to Silver Oak by Key.

5. The aforesaid deed granting the said 18.99 acres to Key shall be for no consideration, and therefore neither Key, nor any other party to this Order, shall be required to pay any applicable transfer tax and stamps for recording of the said Deed upon presentment to the Clerk of the Circuit Court for Anne Arundel County.

/s/

Mark H. Friedman, Esquire
Attorney for Key Federal
Savings Bank

/s/ [Maxwell Moulton, Pres.]
Silver Oak Homes, Ltd.
By: Maxwell Moulton, President

/s/

Maxwell Moulton, President
1/19/90

/s/        1/20/90
George Liebmann, Esquire
Attorney for the Debtor

/s/

Susan O'Master Hallock 1/19/90

/s/ [Susan O'Master Hallock]
Waterfront Development Co., Inc.
By: S.O.H., Pres. 1/19/90

/s/

Ronald J. Kindness

/s/

Mary M. Kindness

/s/        1/19/90
Richard L. Hallock

SO ORDERED:

/s/

James F. Schneider, Judge

DATE:   January 29, 1990

Stipulation [P. 164 filed in the Silver Oak Homes, Ltd. bankruptcy case].

### APPENDIX II

### APPLICATION TO EMPLOY REAL ESTATE AGENT

Debtor, Silver Oak Homes, Inc. by George W. Liebmann, its attorney and Key Federal F.S.B., Secured Creditor, by Mark H. Friedman, his attorney, applies to this court for an order authorizing employment of O'Connor [sic] Piper and Flynn as real estate agent for the sale of the remaining 6 Fox Chapel lots of the estate, compensation to be at the rate of a 6% commission and for reasons states:

1. Debtor has previously sold 14 lots of its Fox Chapel development to Delmarva Homes, Inc., or its assignees pursuant to a contract of sale dated December 31, 1988 providing for settlement by February 28, 1989, the notice of sale provided for payment of a 6% real estate commission to Hallock Inc., as real estate agent.

2. The contract of sale with Delmarva Homes Ltd., has expired by its own terms and the last several settlements of lots have taken place by reason of consent orders entered into by the debtor Key Federal F.S.B.

and Ronald and Mary Kindness, its secured creditors.

3. A stipulation entered into between debtor Key Federal F.S.B. and Ronald and Mary Kindness and others dated January 29, 1990 permits but does not require the debtor to sell the 6 remaining Fox Chapel lots to Delmarva or its assignee.

4. Debtor has recently gained information which persuades it that such sales to Delmarva using Hallock, Inc. as realtor are not in its interest and that of its creditors, and Key Federal F.S.B. and Ronald and Mary Kindness are in accord with this judgment.

5. The information received by debtor's President Maxwell C. Moulton resulting in this judgment includes the following:

a) Delmarva Homes of Maryland, Ltd., has instituted Ch. 11 proceedings in this court on January 25, 1990 (90–5–0313–SD).

b) The schedules filed in connection with these proceedings signed by Richard Hallock as President of Delmarva aver under penalties of perjury that Delmarva has no subsisting executory contracts.

c) The schedules of Delmarva indicates that Richard Hallock contrary to prior representations made by him to debtor and Key Federal F.S.B. has a 50% ownership interest in Delmarva, See Exhibit A hereto.

d) Debtor was provided on February 6, 1989 by counsel for Key Federal F.S.B. an affidavit filed in litigation between Hallock and Michael A. Keogh, a co-owner of Delmarva which makes clear that without disclosure to debtor or this court Hallock has acted both as debtor's real estate agent and as principal in an entity purchasing from debtor.

e) Debtor was informed during the week of February 5, 1989, that Susan O'Master Hallock, a principal in Hallock, Inc. was granted mortgages by Delmarva on lots sold by debtor to Delmarva in consideration of undisclosed real estate commissions exceeding those provided for in debtor's notices of sale.

f) Debtor was informed that Susan O'Master Hallock and Hallock, Inc., derived further and additional compensation from Delmarva for the sale of certain lots.

g) Debtor was advised that personnel of Hallock, Inc. instructed the settlement officer at a scheduled settlement of the six remaining Fox Chapel lots to transfer the lots which were to be sold by debtor for $47,500 each to an entity known as Parkmount, an assignee of Delmarva, which in turn would retransfer them to an entity known as Homes of Chesapeake, owned by Susan Hallock, for $62,500 each.

h) Debtor Key and the Kindnesses received on January 30, 1990 a communication from Richard Hallock (Exhibit C) cancelling the scheduled settlement of 6 lots after Key, the Kindnesses and debtor's counsel insisted that the payments provided for by the stipulation of January 29 and prior agreements be made at settlement and the Kindnesses refused to loan additional funds to Delmarva.

i) Susan O'Master Hallock is currently a Ch. 7 debtor in this court. Richard Hallock who received a discharge in bankruptcy in 1983 during the week of February 5 indicated to debtor's president a purpose to again file personal bankruptcy.

j) Judgment records in Anne Arundel County examined by the president of debtor during the week of February 5, reveal a federal tax lien against Richard Hallock of $77,067.65 dated July 15, 1988 and additional judgments in favor of other persons.

k) Debtor has been advised that Richard Hallock has repeatedly represented to third parties that he and not Silver Oak owns the 6 lots.

Debtor and Key believes that Hallock, Inc. is not a disinterested person within the meaning of the Bankruptcy Code and that the interests of the estate and its creditors require employment of a different real estate agent and the sale of lots at currently determined market prices. Debtor intends to institute an adversary proceeding against Hallock Inc. and its principals for the excess commissions and lost profits and forfeiture of previously paid commissions, rendering fur-

ther employment by Hallock Inc. inappropriate.

WHEREFORE, debtor and Key Federal F.S.B. prays entry of an order approving the employment of O'Conor Piper and Flynn under the listing contract annexed hereto.

/s/_____
Maxwell C. Moulton
President, Silver Oak Homes, Ltd.

/s/_____
George W. Liebmann
Atty. for Silver Oak Homes Ltd., Debtor

/s/_____
Mark H. Friedman
Atty for Key Federal F.S.B.

### CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of February, 1990, copies of the foregoing Application to Employ Real Estate Agent were mailed first class, postage prepared to:

Hallock Inc.
Richard Hallock
Susan O'Master Hallock
1 Compromise Street
P.O. Box 322
Annapolis, MD 21401

Application [P. 168 filed in the Silver Oak Homes, Ltd. bankruptcy case.]

### APPENDIX III

### AGREED ORDER CONCERNING FINAL DEVELOPMENT

Now comes Key Federal Savings Bank (hereinafter Key) by its attorneys, Friedman & MacFadyen P.A. and Mark H. Friedman, Esquire and Silver Oak Homes (hereinafter Silver Oak) by its attorney, George Liebmann, Esquire and respectfully presents this agreed order to this court and requests that it ratify the said agreed order for the following reasons:

1. Prior hereto, on January 29, 1990, a Stipulation and Order Relating to Claims of Key Savings Bank was entered into, executed by all parties and filed with this court.

2. The said Stipulation and Order was signed by the Honorable James F. Schneider.

3. The said Stipulation and Order provided that Key was/is to take all necessary steps to complete the development of certain subdivisions known as Fox Chapel, Franklin Manor and Snug Harbor on behalf of Silver Oak, all located in Anne Arundel County, Maryland.

4. Subsequent to entering into the said Stipulation and Order, the county, as a result of the delays encountered in the last two (2) years, substantially stiffened and modified the requirements necessary for completion of the projects.

5. At present, the appropriate cost for completion of the subdivisions totals Two Hundred Thousand ($200,000.00).

For the reasons stated above, the parties have reached the following agreement:

a. Silver Oak shall move for authority to incur debt from Key with an administrative expense superpriority over any and all administrative expenses of the kind specified in sections 503(b) or 507(b) of the United States Bankruptcy Code in the maximum amount of Two Hundred Thousand Dollars ($200,000.00) based on actual expenses to be utilized to complete the Fox Chapel, Franklin Manor and Snug Harbor subdivisions;

b. As previously agreed, all of Keys loans with Silver Oak concerning the three (3) above mentioned subdivisions shall be cross collateralized.

c. The rights of Key and Silver Oak with respect to proceeds and sale of the property shall continue to be governed by *Snug Harbor* paragraphs 2, 3 and 4 of the Stipulation of January 29, 1990.

d. Legal costs and fees of paragraph 2 of the Stipulation of January 29, 1990 is amended by deleting Seven Hundred Fifty Dollars and substituting One Thousand Dollars ($1,000.00) and by deleting Four Thousand

Five Hundred Dollars ($4,500.00) and substituting Six Thousand Dollars ($6,000.00).

/s/_____
Mark H. Friedman, Esquire
210 E. Redwood Street
Baltimore, MD 21202–3399
Attorney for Key Federal Savings Bank

/s/_____
George W. Liebmann, Esquire
8 W. Hamilton Street
Baltimore, MD 21201
Attorney for Silver Oak Homes, Ltd.

Dated: June 18, 1990

SO ORDERED:

/s/_____
JAMES F. SCHNEIDER, JUDGE

Order [P. 187 filed in the Silver Oak Homes, Ltd. bankruptcy case.]